**Robert C. LAITY, Plaintiff,**

v.

**Thomas BEATTY, President, Service Employees Union, Local 200–C, AFL–CIO, CLC, and John Sweeney, President, Service Employees International Union, Defendants.**

No. CIV–90–1019S.

United States District Court, W.D. New York.

July 5, 1991.

Robert C. Laity, pro se.

Donald D. Oliver, Blitman & King, Syracuse, N.Y., for defendants.

## DECISION AND ORDER

SKRETNY, District Judge.

## INTRODUCTION

Now before this Court are the motions of defendants John Sweeney ("Sweeney"), president of Service Employees International Union ("International"), and Thomas Beatty ("Beatty"), president of Local 200–C of the International ("Local 200–C"), for summary judgment pursuant to Fed.R. Civ.P. 56.[1] Additionally, Beatty moves for sanctions against the plaintiff pursuant to Fed.R.Civ.P. 11.

Plaintiff Robert Laity ("Laity"), appearing pro se, has filed a single opposition to the defendants' motions.

This Court has jurisdiction over Laity's lawsuit pursuant to 29 U.S.C. § 412.

This lawsuit stems primarily from Laity's suspension from his position as a union Steward within Local 200–C. Laity alleges that the defendants violated rights secured by three provisions contained in Title I of the Labor–Management Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. § 401 et seq., ("Title I").[2] Laity alleges violations of Title I §§ 101(a)(2), 101(a)(4) and 101(a)(5), 29 U.S.C. §§ 411(a)(2), 411(a)(4) and 411(a)(5), respectively. Specifically, Laity alleges that Local 200–C indefinitely suspended him from his position as a Steward as retaliation for dissident expression in violation of § 101(a)(2), that the defendants denied him a prior hearing before suspending him in violation of § 101(a)(5), and that, apart from his suspension, the defendants have attempted to restrict Laity's right to file an action with an administrative agency in violation of § 101(a)(4). Laity seeks reinstatement to his former Steward position and certain specified costs.

---

1. Laity has named Sweeney and Beatty defendants in their official capacities. (Laity Notice, ¶ 34). This Court notes that Laity's allegations are not aimed at any particular defendant and, therefore, this Court must, for purposes of this motion, necessarily refer to the defendants collectively. Furthermore, this Court notes that although the defendants' papers sometimes refer to the International and Local 200–C as defendants to this lawsuit, as the First and Second Amended Complaints confirm, only Beatty and Sweeney are named as defendants.

2. This case was originally before Judge Curtin who transferred it to this Court on December 4, 1990. After he filed his Complaint on September 27, 1990, Laity filed a First Amended Complaint on October 11, 1990—which added Sweeney as a defendant. On December 13, 1990 this Court afforded Laity an opportunity to file a Second Amended Complaint to include any additional causes of action, which Laity filed on December 19, 1990. Although this Court deems Laity's December 19, 1990 submission a Second Amended Complaint, it is really a supplemental document; it contains an additional cause of action, and the grounds therefore, and does not incorporate all of Laity's claims. Therefore, while this Court must necessarily refer to Laity's First and Second Amended Complaints, it views both those pleadings together as embodying Laity's complete allegations against the defendants.

Moving for summary judgment, defendants initially contend that this Court lacks subject matter jurisdiction over Laity's lawsuit, arguing that Laity is a public employee and therefore beyond the LMRDA's coverage. Additionally, even if this Court has subject matter jurisdiction, defendants argue that this Court must dismiss Laity's lawsuit because Laity has failed to show that any of the defendants' alleged conduct impaired his membership rights within the union and that, therefore, he has failed to allege any violation of rights secured by Title I. Alternatively, Beatty argues that, even if Laity states a cognizable Title I claim with respect to §§ 101(a)(4) & (5), this Court must dismiss those claims because, essentially, Local 200–C engaged in no conduct violative of those provisions. Sweeney also argues that he is not properly a defendant to this lawsuit.

In any event, defendants argue, Laity's suspension justifiably resulted from his failure on two occasions to attend a meeting requested by Local 200–C's president, and that Laity's conduct amounted to insubordination.

In support of their motions,[3] the defendants have submitted the following: the affidavit and supplemental affidavit of Donald Mumm submitted by Sweeney ("Mumm aff."; "Mumm Supp. aff."); Beatty's statement and supplemental statement of material facts not in dispute ("Beatty fact", "Beatty supp. fact"); Sweeney's statement and supplemental statement of material facts not in dispute ("Sweeney fact", "Sweeney's supp. fact"); the January 25, 1991 affidavit of Thomas Beatty with exhibits ("Beatty"); Sweeney's first legal memorandum and revised legal memorandum ("Sweeney memo.", "Sweeney rev. memo."); and Beatty's revised legal memorandum ("Beatty memo.")

In opposition to the defendants' motions, Laity has submitted a Notice of Motion ("Laity Notice"); a Supplemental Notice of Motion with exhibits ("Laity Supp. Notice"); the affidavit of Jane Pickering ("Pickering"); the affidavit of Ona Baton ("Baton"); and the affidavit of James Carney ("Carney"). Laity has also filed an opposition to Beatty's motion for sanctions.

Conclusion: For the reasons set forth below, this Court finds that it has subject matter jurisdiction over this lawsuit and grants the defendants' motions for summary judgment in their entirety. Additionally, this Court denies Beatty's motion for sanctions.

### FACTS

The Following material facts are not in dispute.

At all relevant times, including the present, Laity has been employed by the United States Veterans Administration and is a member of the International, Local 200–C. Local 200–C represents members employed in the private and public sectors.

Article VIII, Section I of Local 200–C's Constitution and Bylaws authorizes the president of Local 200–C to "... appoint a Shop Steward, or order a proper election for the Shop Steward whenever he or she deems it necessary for the welfare of the membership and the Local Union." (Beatty memo., p. 1).

In late 1988, Laity was appointed Steward for Local 200–C at the Buffalo Veter-

---

**3.** After Judge Curtin transferred this case to this Court, the defendants filed renewed motions with this Court on January 30, 1991. Additionally, each defendant filed a second legal memorandum which essentially duplicates the first and then raises additional points. Laity also has filed a supplemental opposition to the defendants' motions which, for the most part, duplicates his earlier opposition. Therefore, although this Court has reviewed all submissions of the parties, this Court, with a few exceptions which will be noted, does not cite to certain earlier submissions which have been superseded.

This Court notes that defense counsel has chosen to file two motions, one for each defendant, instead of a single motion for both defendants. This bifurcation somewhat betrays the fact that most of the focal legal issues are common to and argued by both defendants, most notably, the dispositive legal issue which prompts this Court, as detailed below, to dismiss this lawsuit. Additionally, this Court views all submissions as contributing to the totality of the factual record. In any event, unless otherwise stated, cited submissions or arguments by one defendant applies equally to the other.

ans Administration Medical Center ("BVAMC"). Laity did not become Steward through an election. (Laity Supp. Notice, ¶ 8).

A Steward is neither an officer nor an employee of Local 200–C. (Beatty fact, ¶ 3; Laity Supp. Notice, ¶¶ 19–20, 58). The Steward's responsibilities include resolving problems between union employees and the employer. (Mumm, ¶ 3; Beatty fact, ¶ 3).

On April 24, 1990, Laity attended a general membership meeting (the "April meeting") of the BVAMC. The parties, however, have characterized Laity's conduct at the April 24 meeting differently. Defendants contend that at the April 24 meeting, Laity "... stood up and began to shout in a loud and abusive manner, walked towards the Division's chief steward in a threatening manner, making a vulgar remark to her." (Beatty memo, p. 2; Beatty exh. A). Laity does not deny he used profane language at the April meeting and argues that others at the meeting used such language as well. (Laity Notice, ¶ 7; See, Pickering, ¶ 10). Laity, however, vehemently denies making any physical threats or hostile approaches toward anyone at the April 24 meeting. (Laity Notice, ¶ 7; See, Pickering, ¶ 18; Baton ¶ 25).

On April 27, 1990, by certified letter addressed to Laity, Beatty requested a meeting with Laity. According to the letter, this request stemmed from "complaints" prompting Beatty's investigation of Laity's "... conduct ..." at the April meeting. (Beatty, exh. B; Laity Notice, ¶ 9). By letter dated April 29, 1990 addressed to Beatty, Laity declined to attend a meeting with Beatty to discuss Laity's conduct at the April meeting. Laity expressed his belief that Beatty lacked authority to compel his presence at such a meeting and that the proper procedure for filing charges against a union member had not been followed. (Beatty, exh. C; Laity Notice, ¶ 10). By letter addressed to Laity dated May 1, 1990, Beatty informed Laity that no formal charges had been filed against him and renewed his request for a meeting with Laity. (Beatty, exh. D). Laity did not

attend this subsequently scheduled meeting.

On May 20, 1990, Local 200–C's Executive Board indefinitely suspended Laity from his position as Steward. By certified letter dated May 29, 1990, the Board notified Laity of the suspension and informed him that the basis for the suspension was Laity's "... conduct at the April 24, 1990 ... meeting ... and [Laity's] subsequent refusal to meet with Local Union President/Thomas Beatty to discuss the matter." (Laity Supp. Notice, exh. F).

On May 25, 1990, Laity filed with the International charges against Beatty alleging that Beatty had "... engaged in conduct unbecoming of an officer." The source of these charges were, *inter alia*, Beatty's handling of certain internal union matters at the BVAMC and Laity's allegation that Beatty engineered "... a campaign ..." to ruin Laity's reputation. (Laity Supp. Notice, exh. H).

On June 4, 1990, Laity filed with the International additional charges against Beatty, the entire Local 200–C Executive Board and its business representative alleging that Laity was improperly suspended from his position as Steward without a prior hearing in violation of the LMRDA. (Laity Supp. Notice, exh. D).

In response to Laity's charges against Local 200–C and Beatty, the International's Executive Board appointed one of its members, Donald Mumm, to conduct a hearing and, by letter dated July 24, 1991, noticed Laity of the hearing to be conducted on August 9, 1990 ("the August hearing"). (Mumm Supp. aff., exh. B). Mumm conducted the August hearing at which Laity was present and testified.

On October 31, 1990, Mumm submitted his Findings of Fact, Conclusions and Recommendations ("the report") to the International's Executive Board (Beatty, exh. E).

The report concluded, *inter alia*, that the Local 200–C Executive Board acted within its authority by suspending Laity as a Steward. Since Local 200–C's constitution provided that Stewards may be appointed by the Local 200–C president, the report

found, they served only at the president's discretion. Thus, the report further concluded, the authority to suspend a Steward was "... inherent in the power to appoint." (Beatty, exh. E, p. 7). The report found that Beatty, as president of Local 200–C, had authority to request Laity's presence at a meeting to discuss Laity's conduct and that "... failing to respond to the Local President's request was insubordination by an appointed representative of the Local...." (Beatty, exh. E, p. 13). Although Laity testified that he feared physical reprisal if he attended the meeting with Beatty, Mumm found no evidence that Laity "... had been subjected to any violent behavior in the past or that Beatty was in any way prone to commit violent acts." (Beatty, exh. E, p. 7). Finally, the report concluded that, because Laity's suspension "... was a matter of internal management of the Local's affairs ..." and the suspension did not infringe on Laity's right or status as a union member, there was no reason for a hearing prior to Laity's suspension. (Beatty, exh. E, pp. 12–13).[4] Therefore, the report ultimately upheld Local 200–C's indefinite suspension of Laity as Steward.

In December, 1990 the International's Executive Board adopted the report in its entirety. (Mumm Supp. aff., ¶ 5).

Since Local 200–C suspended Laity as Steward, Laity has remained a regular member of Local 200–C. (Beatty, ¶ 9). Subsequent to his suspension, Laity entered an election for the position of Chief Steward but lost. (Beatty fact, ¶ 13; Laity Supp. Notice, ¶ 65).

Thereafter, Laity filed an unfair labor practice charge against Local 200–C and the International with the Federal Labor Relations Authority ("FLRA") alleging that Local 200–C violated the Labor–Management and Employee Relations Act, Title VII of the Civil Service Reform Act of 1978 (the "Act"). Specifically Laity charged that his suspension as Steward violated 5 U.S.C. §§ 7116(b)(1), (b)(3) & (c). Laity also argued that his suspension deprived him of due process in violation of Local 200–C's Constitution and By–Laws.

After an investigation the Acting FLRA Regional Director concluded that Local 200–C did not violate the Act by suspending Laity as Steward and declined to issue a Complaint against Local 200–C. (Beatty memo., exh. A, p. 2). The Acting Regional Director concluded, upon review of all the evidence, that Laity's exercise of statutorily protected activity was not "... a motivating factor ..." prompting Laity's suspension. The Acting Regional Director found that

... for several months [Laity was] involved in internal controversies over the Local Union's affairs, which culminated in [Laity's] refusal to cooperate in the President's inquiry into complaints about [Laity's] conduct at a membership meeting.

Lastly, with respect to Laity's due process claim the Acting Regional Director found this claim within the exclusive jurisdiction of the Assistant Secretary of Labor for Labor–Management Standards, pursuant to 5 U.S.C. § 7120. (Beatty memo., exh. A, p. 2).

Thereafter, the FLRA Assistant General Counsel for Appeals denied Laity's appeal of the Acting Regional Director's decision. The Assistant General Counsel rejected Laity's argument on appeal that his suspension as Steward was a retaliatory measure in response to Laity's past filing of unfair labor practice charges. (Beatty memo., exh. B, pp. 1–2).

Next, pursuant to the Civil Service Reform Act ("CSRA"), 5 U.S.C. § 7120, Laity filed a complaint against the International and Local 200–C with the U.S. Department of Labor, Office of Labor–Management Standards ("DOL"). By letter dated November 13, 1990, the DOL declined to consider Laity's complaint on the grounds that, since Local 200–C and or the International represented both private and public employees, the CSRA did not apply but instead Laity's union was "... governed by

---

4. The report also concluded that nothing emanating from Beatty's correspondence to Laity demonstrated that "... Beatty had engaged in conduct unbecoming of an officer." (Beatty, exh. E, p. 7).

the Labor–Management Reporting and Disclosure Act (LMRDA) ..." and therefore Laity would have to pursue his remedies under that statute. (Laity Supp. Notice, exhs. A, W).

Thereafter, on September 27, 1990 Laity initiated this lawsuit.

## SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate where "... there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The burden is upon the moving party to demonstrate the absence of a material factual dispute. Fed.R.Civ.P. 56(e). Once that burden is met, the non-moving party "... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). This Court must draw all reasonable inferences in favor of the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970). However, courts should not be reluctant to grant summary judgment in appropriate cases since "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986), thereby permitting courts to avoid "... protracted, expensive and harassing trials." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.1985), *cert. denied*, 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985).

Applying this standard to Laity's lawsuit, this Court concludes that no genuine issue of material fact exists as to any of Laity's claims and, therefore, Laity's lawsuit must be dismissed.

## DISCUSSION

I. *Jurisdiction*

Initially, defendants argue that this Court lacks subject matter jurisdiction over Laity's lawsuit on the grounds that Laity, as a public employee, is excluded from coverage under the LMRDA.

As noted above, Local 200–C represents members who are employed in the private and public sectors and, as such, is known colloquially as a "mixed union." While at least the Eleventh Circuit has expressly held that members of mixed unions fall within the LMRDA's protection, the Second Circuit has not squarely addressed this issue.

By its terms, the LMRDA only covers employees as that term is defined by the statute. 29 U.S.C. § 402(f) defines employee as, *inter alia*, "... any individual employed by an employer...." The LMRDA excludes as an employer the "... United States or any corporation wholly owned by the Government of the United States or any State or political subdivision thereof." 29 U.S.C. § 402(e). Additionally, the LMRDA defines labor organization as

> ... a labor organization engaged in an industry affecting commerce and includes any organization of any kind, any agency, or employee representation committee, group, association, or plan so engaged in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours, or other terms or conditions of employment....

29 U.S.C. § 402(i).

Laity's employer is the United States Veterans Administration and, it can be argued as defendants do in this case, that the LMRDA, by virtue of 29 U.S.C. § 402(e)'s definition of employer, which is subsumed in the LMRDA's definition of employee, excludes Laity from the LMRDA's coverage.

■ However, this Court concludes that whether or not Laity is entitled to the protection of Title I depends, not on his employer, but whether his labor union falls within the scope of Title I. As the Eleventh Circuit has noted, Congress designed the LMRDA to impact the controversies between "... a worker and his union, not the relationship between a union member and his employer." *Hester v. Internation-*

*al Union of Operating Engineers*, 818 F.2d 1537, 1540 (11th Cir.1987), *modified*, 830 F.2d 172 (11th Cir.1987), *reversed on other grounds*, 488 U.S. 1025, 109 S.Ct. 831, 102 L.Ed.2d 963 (1989).[5]

In *Hester*, reversing the district court's dismissal of a mixed union employee's LMRDA claim on the grounds that 29 U.S.C. § 402(e) excluded federal employers, the Eleventh Circuit directly confronted the issue of whether the LMRDA's protection extended to "mixed union" employees. Emphasizing the LMRDA's policy of protecting union members from undemocratic conduct by union officials, and the statutory framework designed to achieve this protection, the Eleventh Circuit concluded that the operative issue with respect to subject matter jurisdiction under the LMRDA was not whether the statute covered employers, as defendants argue in this case, but whether the LMRDA covered the relevant labor organization. *Id.*, at 1540–41. The Court then concluded that the definition of labor organization contained in 29 U.S.C. § 402(i) included those labor organizations representing both private and public sector employees.

Moreover, the Secretary of Labor has issued a regulation interpreting the LMRDA's coverage with respect to mixed unions and concludes that such "... would be 'labor organizations' and subject to the LMRDA." 29 C.F.R. § 451.3(a)(4). *See, Black v. Transport Workers Union of America, AFL–CIO*, 454 F.Supp. 813, 821, n. 8 (S.D.N.Y.1979) (Relying on 29 C.F.R. § 451.3(a)(4), Court held mixed union and union local within LMRDA's coverage), *affirmed*, 594 F.2d 851 (2d Cir.1978) (without opinion).

■ This Court agrees with *Hester*, *Black* and the Secretary's construction, and finds the LMRDA's definition of labor union to include unions consisting of employees, as defined in 29 U.S.C. § 402(i), and employees in the public sector. Partic-

ularly viewing the LMRDA's remedial scheme aimed at the labor union—union member relationship, *See Finnegan v. Leu*, 456 U.S. 431, 102 S.Ct. 1867, 72 L.Ed.2d 239 (1982), discussed below, this Court finds that the LMRDA protects mixed union employees.

Therefore, this Court concludes that it has subject matter jurisdiction over Laity's lawsuit.

## II. *Is Sweeney Properly A Defendant To This Lawsuit?*

■ Sweeney argues that since he is only one of fifty one individuals who comprise the International's Executive Board, which ratified Local 200–C's suspension of Laity, he bears no responsibility for the actions of the International Executive Board. (Sweeney fact, ¶ 13; *See* Sweeney memo, p. 9). Sweeney has provided this Court no authority in support of this proposition.

Laity sues Sweeney in his official capacity as a "... chief executive official ..." of the International. (Laity Notice, ¶ 34).

Viewing the evidence most favorable to Laity, this Court cannot conclude, as a matter of law, that as the International's president Sweeney bears no responsibility for his official action on behalf of the union which Laity alleges to be violative of Title I.

As will be seen from this Court's discussion below, the conclusion that Sweeney is properly a party to this lawsuit has little practical consequence for purposes of this motion, since Laity has simply failed to state a cognizable Title I claim and, therefore, this Court must dismiss his lawsuit.

## III. *Does Laity Allege The Violation Of Any Rights Secured By Title I?*

In his Second Amended Complaint, Laity alleges that several actions by the defendants violated his rights secured by Title I,

---

5. In reversing *Hester* on statute of limitations grounds, the Supreme Court did not disturb the Eleventh Circuit's finding that the district court had subject matter jurisdiction over the lawsuit. *See, Hester v. International Union of Operating*

*Engineers*, 878 F.2d 1309, 1310 (11th Cir.1989) (on remand the Eleventh Circuit found that the Supreme Court's mandate left its subject matter jurisdiction conclusion intact).

§§ 101(a)(2), 101(a)(4) and 101(a)(5).[6] First, Laity alleges that defendants infringed upon Laity's right to "[e]xpress ... views, arguments, or opinions ..." at union membership meetings under § 101(a)(2) (Second Amended Complaint, ¶ 3). Second, Laity alleges that defendants attempted to "limit" Laity's "... right ... to institute an action ... in ... any administrative agency ..." under § 101(a)(4). With respect to this claim, Laity alleges that Beatty "... stated to a group of union members ..." that "... all Laity does is file Unfair Labor Practice Charges against the union ..." and that this statement constitutes a violation of § 101(a)(4). (Second Amended Complaint, ¶ 19). And third, Laity alleges that he was suspended from his Steward position "... without a hearing and without the presentation, by the union, of any written and specific charges ..." in violation of § 101(a)(5) (First Amended Complaint, p. 1).

■ Defendants argue that this Court must dismiss all three of Laity's Title I claims since Laity has failed to allege or otherwise produce evidence that any of the defendants' conduct impaired his membership status within Local 200-C, a necessary requirement to stating a cognizable Title I claim.

The body of LMRDA Title I jurisprudence has emanated from *Finnegan v. Leu*, 456 U.S. 431, 102 S.Ct. 1867, 72 L.Ed.2d 239 (1982). In *Finnegan*, affirming both lower courts which held a defendant labor union entitled to summary judgment, the Supreme Court held that appointed business agents of a union local ("the agents") failed to establish that the union violated rights secured under either LMRDA § 609 or Title I.

In that case, the agents, who were also union members, sued the local after their discharge as agents by the local's president. The agents had been appointed to their position by the predecessor president, whom they openly supported in his unvictorious bid for re-election. After the opposing candidate emerged victorious, he fired the agents. The agents sued, alleging that their removal as appointed business agents violated LMRDA Title I and § 609.[7]

Although the agents occupied "... a dual status as both employees and members of the Union," reviewing the LMRDA's legislative history and emphasizing that the language of the statute spoke in terms of union members' protected

---

**6.** § 101(a)(2) provides that

Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: *Provided,* That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.

§ 101(a)(4) provides that

No labor organization shall limit the right of any member thereof to institute an action in any court, or in a proceeding before any administrative agency, irrespective of whether or not the labor organization or its officers are named as defendants or respondents in such action or proceeding, or the right of any member of a labor organization to appear as a witness in any judicial, administrative, or legislative proceeding, or to petition any legislature or to communicate with any legislator: *Provided,* That any such member may be required to exhaust reasonable hearing procedures (but *not* to exceed a four-month lapse of time) within such organization, before instituting legal or administrative proceedings against such organizations or any officer thereof: *And provided further,* That no interested employer or employer association shall directly or indirectly finance, encourage, or participate in, except as a party, any such action, proceeding, appearance, or petition.

§ 101(a)(5) provides that

No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing.

**7.** In this case, Laity has not alleged that defendants violated LMRDA § 609.

rights, the Court concluded that "... it was rank-and-file union members—not union officers or employees, as such—whom Congress sought to protect ..." when enacting the LMRDA. *Id.*, 456 U.S. at 437, 102 S.Ct. at 1871. Therefore, the Court held that "... removal from appointive union employment [was] not within the scope of ... § 609." *Id.*, 456 U.S. at 439, 102 S.Ct. at 1872.

Next, the Court considered whether the union's removal of the agents from their appointed employment infringed any rights secured by Title I (specifically, the agents alleged violations of Title I, §§ 101(a)(1) & (2)). Concluding that Title I did not "... restrict the freedom of an elected union leader to choose a staff whose views are compatible with his own," the Court similarly held that the agents failed to establish any violation of Title I. *Id.*, 456 U.S. at 441–42, 102 S.Ct. at 1873.

Lastly, in an often cited footnote, the Court expressly left open the issue of whether "... a different result might obtain in a case involving nonpolicymaking and nonconfidential employees." 456 U.S. at 441, n. 11, 102 S.Ct. at 1873, n. 11.

Although *Finnegan* itself left open issues relevant to Laity's lawsuit now before this Court, two post-*Finnegan* cases from this Circuit, construing the scope of Title I's protection, provide this Court a framework in which to decide the present motion.

In *Cotter v. Owens*, 753 F.2d 223 (2d Cir.1985), the Second Circuit affirmed the district court's holding that a former member of a union local's nuclear safety committee failed to allege a Title I claim under the theory that he was a nonpolicymaking employee and therefore outside the holding of *Finnegan*. The Court, however, still remanded the case for the district court's consideration of Cotter's claim that his removal from the committee was part of an overall scheme to suppress dissent within the union.

In *Cotter*, a union member alleged that union officials removed him from the local's nuclear safety committee as retaliation for dissident conduct—Cotter helped found a committee critical of union leadership and was known to complain of nuclear

safety at his plant. As a committee member, Cotter was not a union employee and membership on the committee was an appointed not an elected position. In his lawsuit, Cotter alleged that his removal violated LMRDA §§ 101(a)(2) & (4). *Id.*, at 225.

Relying on *Finnegan*'s footnote 11, discussed above, Cotter argued that *Finnegan* excepted "... nonpolicymaking and nonconfidential ..." officials, even if appointed, and that his position on the nuclear safety committee was such a nonpolicymaking position. Therefore, Cotter argued, summary judgment was inappropriate where a material factual issue existed relative to Cotter's nonpolicymaking role.

The Second Circuit rejected Cotter's argument on two separate grounds. First, the Court held, citing *Finnegan*, that Title I protected union action "... directly affecting membership rights," and although the Court did not discuss this fact in detail, it found that Cotter's removal from the committee did not affect his union membership rights. *Id.*, at 228. Second, although the Court did not recognize the existence of a nonpolicymaking exception to *Finnegan*, the Court, assuming *arguendo* that such exception existed, found that Cotter did occupy a policymaking position as a member of the nuclear safety committee and, therefore, *Finnegan* expressly barred the relief Cotter sought under Title I.

However, finding that a litigant stated a cognizable Title I claim when demonstrating upon clear and convincing evidence that his dismissal stemmed from a scheme to suppress union dissent, the Court still remanded the case for the district court's consideration of Cotter's claim that his removal from the committee was part of an overall scheme to suppress dissent within the union. *Id.* at 229. In this case, Laity does not allege any such overall scheme, and, in any event, this Court finds no factual evidence in the record to support such a claim.

Shortly after deciding *Cotter*, in *Franza v. International Brotherhood of Teamsters, Local 671*, 869 F.2d 41 (2d Cir.1989), the Second Circuit again confronted the

issue, left open in *Finnegan,* whether Title I's protection extended to nonpolicymaking employees of the union. In rejecting the argument that a union member's simultaneous policymaker status as a union employee brought that individual within Title I's protective umbrella, the Court confirmed, as *Finnegan* implicitly concludes, that the impact of union conduct upon an individual's union employment is actually irrelevant to stating a claim under Title I. Rather, the proper focus is the impact union conduct has upon an individual's union membership status.

In *Franza,* a hired field auditor to a union local's Health Services and Insurance Plan ("Plan"), also a union member, alleged that his discharge as field auditor violated his rights secured under Title I. Franza was hired to the position by the union local's Secretary–Treasurer, later defeated in an election. Subsequently, the successor Secretary–Treasurer discharged Franza as field auditor.

Faced with the obstacles to relief created by *Finnegan* and *Cotter,* Franza contended that because he was neither a union employee nor a policymaker, he stated a cognizable Title I claim.

The Court rejected Franza's argument that his nonpolicymaker status as an employee of the union triggered Title I protection:

> *Finnegan* teaches that it is not a member's *employment by the union* that is protected by Title I; rather it is his *membership in the union* that is safeguarded.

*Franza,* 869 F.2d at 47 (emphasis supplied).

Rather, the proper analysis with respect to whether a union member has alleged a Title I claim, according to the Court, focused on the effect discharge from union employment had upon union membership status;

> ... Hence, the test is not whether the employee is or is not in a policymaking position, rather the question is whether membership rights in the union were directly infringed by action taken with respect to a union member's employment status.

*Id.,* at 48. Accordingly, the fact that Franza occupied a nonpolicymaker status as an employee of the Plan remained irrelevant to the sufficiency of Franza's Title I claim. Since Franza's union membership rights remained unaffected by his loss of employment with the Plan, the Court held that Franza's loss of employment was "... not the infringement of a right to which Title I's protections attach." *Id.* Therefore, the Court affirmed dismissal of Franza's Title I lawsuit.

The trilogy of *Finnegan, Cotter* and *Franza* dictate the necessary result in this case. Based on those cases, this Court concludes that Laity has no cognizable Title I claims.

Laity was appointed to his position as Steward. As a Steward he was not an employee of Local 200–C. Although, as Steward Laity arguably occupied a confidential relationship as a go-between amongst union members and his employer this Court need not explore the extent of Laity's confidential position or policymaking role, if any, since this Court finds that Laity's union membership status remains unaffected by his discharge as Steward.

Laity has simply offered no evidence that his discharge as Steward affected his union membership rights. In fact, the only evidence before this Court indicates the contrary. It remains undisputed that after Local 200–C discharged him as Steward, Laity was free to attend membership meetings, which he did, and free to vote in Local 200–C elections. In fact, Laity ran for elective office within Local 200–C. (Beatty, ¶¶ 11–12; Laity Supp. Notice, ¶ 65).

Laity argues that his suspension did effect his rights as a union member on essentially three grounds: first, that he had a "membership right" "... guaranteed, by law, to represent [the] union as a representative ..." under 5 U.S.C. § 7102(1) & (2); second, that he had a "membership right" to "... express [his] views at union meetings ...;" and third, that he had a "membership right" "... to have a full and fair hearing under 5 U.S.C. § 7120...." (Laity Notice, ¶ 21).

102

■ First, this Court addresses Laity's "membership right" to act as a union representative under the Civil Service Reform Act ("CSRA"), § 5 U.S.C. 7102(1) & (2), and his "membership right" to have a full and fair hearing under the CSRA, 5 U.S.C. § 7120.

The CSRA, 5 U.S.C. § 7101 *et seq.*, is an entirely separate statute from the LMRDA and also embodies a separate scheme for its enforcement. Although both statutes contain "union democracy" provisions—aimed at guaranteeing union members certain basic protections—generally while the LMRDA covers labor organizations consisting of members employed in the private sector, the CSRA covers labor organizations consisting of members employed by the federal government. This distinction, of course, is not always steadfast, for example in this case, where a labor organization consists of members employed in both private and public sectors, those members may sue to vindicate rights secured by the LMRDA. Also, although Congress designed the CSRA to "... conform to principles applying to private sector labor organizations[,]" *Local 1219, American Federation of Government Employees v. Donovan*, 683 F.2d 511, 515, n. 13 (D.C.Cir.1982), the enforcement mechanisms available to enforce the protections contained in the two laws are quite different. Under the LMRDA an aggrieved individual may file a private lawsuit in federal court to pursue his Title I rights, 29 U.S.C. § 412, while pursuant to the CSRA, an individual must initially file a complaint with the Assistant Secretary of Labor under 5 U.S.C. § 7120(d) to pursue rights secured under the CSRA. Thus while the LMRDA affords a private right of action, the CSRA does not.

In this case, before filing this lawsuit Laity sought relief under the CSRA by properly filing a complaint with the Assistant Secretary of Labor. The Buffalo District Office of the Office of Labor–Management Standards, United States Department of Labor, responded that the Department of Labor could not consider Laity's complaint because his remedy, if any, would lie under the LMRDA and not the CSRA. (Laity Supp. Notice, exh. A). Subsequently, Laity wrote the Assistant Secretary for Labor–Management Standards in Washington D.C. for clarification as to why his claim should be brought under the LMRDA as opposed to the CSRA. The Acting Deputy Assistant Secretary for Labor–Management Standards responded that, since Laity's union represented "... private sector employees as well as employees of the Federal government[,]" Laity's claim belonged under the LMRDA and not the CSRA. (Laity Supp. Notice, exh. W). This decision reflects a policy taken by the Department of Labor that the LMRDA applies to "mixed" labor organizations. Indeed, the Secretary of Labor has codified this policy in an interpretative regulation contained at 29 C.F.R. § 451.3(a)(4). Although arguably the definition of "Labor Organization" contained in the CSRA is substantively the same as that definition in the LMRDA, compare 5 U.S.C. § 7103(a)(4)(CSRA) to 29 U.S.C. §§ 402(i)(LMRDA), this policy implies that since the LMRDA applies to mixed unions, the CSRA, at least according to the Department of Labor, does not.

In any event, Laity's Second Amended Complaint alleges that the defendants violated certain rights secured under the LMRDA Title I, and it is those rights at issue before this Court, not any CSRA rights Laity might possess. Therefore, any alleged violations of Laity's CSRA rights were, pursuant to 5 U.S.C. § 7120(d), properly brought before the Department of Labor, which acted thereon, and are not now properly before this Court.

■ Second, with respect to Laity's right to express his views at union meetings, to the extent Laity is arguing that his right to expression as a union member has been impaired by virtue of his subsequent suspension, and that, therefore, his suspension was violative of Title I § 101(a)(2), this Court rejects such a claim. While it is true that the notice informing Laity of his suspension stated that the basis for the suspension was Laity's "... conduct ..." at the April meeting *and* Laity's "... subsequent refusal to meet with Local Union President/Thomas Beatty to discuss the

matter[,]" (Laity Supp. Notice, exh. F), the evidence before this Court clearly establishes that Laity's suspension directly resulted from his failure to comply with Beatty's request for a meeting, on more than one occasion, to discuss Laity's conduct at the April 24 meeting and that Laity's suspension did not directly result from Laity's conduct at the meeting itself. Thus although Laity emphasizes that defendants have mischaracterized his conduct at the April 24, 1990 meeting, (*See,* Pickering, Baton, Carney), Laity's emphasis is misplaced.

First, After Laity declined to attend the first requested meeting with Beatty to discuss Laity's conduct Beatty informed Laity that no formal charges had been filed against him and renewed his request for a meeting with Laity which Laity still did not attend.

Second, after a hearing, at which Laity testified, specifically convened partly in response to Laity's charge that his "arbitrary" suspension violated the International's Constitution, the hearing officer concluded that Beatty, President of Local 200–C, had authority to request Laity's presence at a meeting to discuss Laity's conduct and that "... failing to respond to the Local President's request was insubordination by an appointed representative of the Local...." (Beatty, exh. E, p. 13). He further concluded that under the Local 200–C Constitution, the Local 200–C Executive Board acted within its authority by suspending Laity as a Steward and that Laity's fears of physical reprisal, one of the reasons Laity contended not to have attended the meeting with Beatty, were unfounded. Lastly he concluded that, since Laity's suspension did not infringe on Laity's right or status as a union member, there was no reason for a hearing prior to Laity's suspension. (Beatty, exh. E, pp. 12–13). The International's Executive Board separately adopted this conclusion. (Mumm Supp. aff., ¶ 5).

**8.** As noted above, with respect to Laity's due process claim the Acting Regional Director found this claim within the exclusive jurisdiction of the Assistant Secretary of Labor for

Third, in response to Laity's subsequent filing of an unfair labor practice charge against Local 200–C and the International with the FLRA alleging that, *inter alia,* his suspension was an act of reprisal for filing unfair labor practice charges against Local 200–C, violative of the Labor–Management and Employee Relations Act, and that the suspension deprived him of due process violative of Local 200–C's Constitution and By–Laws, the FLRA's Acting Regional Director, after independent investigation, declined to issue a Complaint against Local 200–C. (Local 200–C Memo., exh. A, p. 2). Although the FLRA did not adjudicate Laity's Title I rights, it did find that Laity's suspension was not an act of reprisal for certain dissident conduct but instead stemmed from Laity's refusal to meet with Beatty. The Acting Regional Director concluded that

... for several months [Laity was] involved in internal controversies over the Local Union's affairs, which culminated in [Laity's] refusal to cooperate in the President's inquiry into complaints about [Laity's] conduct at a membership meeting.

On appeal the FLRA Assistant General Counsel denied Laity's appeal of the Acting Regional Director's decision and, in so doing, rejected Laity's argument on appeal that his suspension as Steward was a retaliatory measure in response to Laity's past filing of unfair labor practice charges. (Local 200–C Memo., exh. B, pp. 1–2).[8]

Finally, this Court simply finds no evidence to support Laity's contention that the union has suppressed Laity's membership right to free expression. Laity has come forth with no evidence even suggesting that he does not remain free to express his views at membership meetings without reprisal.

Therefore, since this Court finds that Laity has no cognizable Title I claim, this Court need not consider the remainder of the defendants' arguments.

Labor–Management Standards, pursuant to the CSRA, 5 U.S.C. § 7120. (Local 200–C Memo., exh. A, p. 2).

**104**

### IV. *Beatty's Motion For Sanctions*

 Finally, this Court denies Beatty's motion for sanctions against Laity pursuant to Fed.R.Civ.P. 11. Viewing the entire record, this Court cannot conclude that Laity's claims so lack a colorable basis so as to be frivolous. Moreover, this Court does not find that Laity filed this lawsuit in bad faith or with improper motive.

### CONCLUSION

For the reasons set forth above, this Court finds the existence of no genuine issue of material fact with respect to any of Laity's claims against the defendants and, therefore, grants the defendants' motions for summary judgment in their entirety. This Court also denies Beatty's motion for sanctions.

### ORDER

IT HEREBY IS ORDERED, that this Court GRANTS the defendants' motions for summary judgment pursuant to Fed.R. Civ.P. 56 in their entirety.

FURTHER, that this Court DENIES defendant Thomas Beatty's motion for sanctions pursuant to Fed.R.Civ.P. 11.

FURTHER, that this Court directs the Clerk of the United States District Court for the Western District of New York to dismiss plaintiff's action in accordance with this opinion.

SO ORDERED.