**James M. PARKER, Plaintiff,**

v.

**Donnie MAIN, et al., Defendants.**

**Civ. A. No. 91–T–1368–S.**

United States District Court,
M.D. Alabama, S.D.

Aug. 20, 1992.

James M. Parker, pro se.

Charles A. Hobbie, Deputy General Counsel, American Federation of Government Employees, AFL–CIO, Washington, D.C., for defendants.

## MEMORANDUM OPINION

MYRON H. THOMPSON, Chief Judge.

This lawsuit stems from disciplinary proceedings instituted against the plaintiff James M. Parker by the local bargaining unit of his union. In response to those proceedings, he brought this suit against five defendants: his co-worker who filed the grievance against him; three members of the committee which investigated her complaint; and the chair of the committee which tried Parker. This cause is now before the court on the parties' cross motions for summary judgment. For the reasons that follow, the court concludes that the defendants' motion should be granted and Parker's motion should be denied.

## I. BACKGROUND

Parker, a civilian employee of the Department of the Army at Fort Rucker, Alabama, was chief steward of his local bargaining unit, Local 1815 of the American Federation of Government Employees, AFL–CIO.[1] In June of 1991, one of Parker's fellow employees, Carole Schumaker, filed a complaint against him with the union, expressing dissatisfaction with his representation of employees' interests. She contended that Parker was too "pro-management" in his dealings with her employer, she disagreed with his position on the company's smoking policies, and she believed that Parker improperly allowed another employee to accompany him on official business. Schumaker's complaint was referred to the union's investigation committee, whose members included Ronald Watson, David Bradley, and Hans Langhammer. On September 10, 1991, the committee informed Parker that it could not resolve Schumaker's complaints informally and was referring the matter to the union's trial committee for formal charges of misconduct, with a trial to be held on November 13. Donnie Main was the presiding officer of the trial committee.

On November 8, 1991, Parker brought an action in this court under the Labor–Management Reporting and Disclosure Act (LMRDA), 29 U.S.C.A. § 401, et seq., charging that the disciplinary proceedings were brought against him in bad faith. He alleged that the investigation was designed to interfere with his upcoming bid for the local's presidency, by damaging his reputation and by jeopardizing his eligibility for office. More specifically, he alleged that the defendants—Schumaker, Watson, Bradley, Langhammer, and Main—had not observed many of the procedural safeguards required by the union's constitution and had damaged his reputation by pursuing what he contends are frivolous charges. In his action, Parker asked for a temporary restraining order enjoining the trial committee from proceeding with their trial prior to the local's elections and for $1,000 in

---

**1.** The court assumes, although the parties have not supplied this information, that a union steward's responsibility is to resolve problems between individual employees and their employer. *See Laity v. Beatty,* 766 F.Supp. 92, 95 (W.D.N.Y. 1991), *aff'd,* 956 F.2d 1160 (2d Cir.1992) (Table).

damages from each defendant, plus fees and costs. On November 12, 1991, after an ex parte hearing, this court denied the motion for a temporary restraining order. The next day the trial committee conducted its hearing and completely exonerated Parker. The committee's decision was later overturned by the union membership and subsequently reinstated by the national union.

Shortly thereafter, the defendants filed a motion for dismissal or, in the alternative, for summary judgment, which the court treated as solely a motion for summary judgment. In their motion, the defendants contended that this court lacks subject-matter jurisdiction because, as members of a public sector union, their conduct is governed solely by the Civil Service Reform Act (CSRA), 5 U.S.C.A. §§ 7101, et seq., which does not provide for a private right of action in federal court. The LMRDA, the statute under which Parker brought his action, does provide for private lawsuits but, according to the defendants, is only applicable to labor organizations serving the private sector.

In his response and cross motion for summary judgment, Parker revised his theory of the case. He now admits that his reliance on the LMRDA was "erroneous" and contends that his suit is a pure defamation action that does not raise any labor issues. Parker contends in his response that the content of Schumaker's complaint was defamatory, and that the defendants harmed him by "publishing" her complaint without first observing the union's procedural standards.

The defendants answer this new line of attack by arguing, first, that, if Parker's claim is truly a simple defamation action, then no federal question is present to provide this court with jurisdiction. Second, they argue that, even if the court generally has subject-matter jurisdiction over defamation actions, Parker's complaint is merely a deceptively pleaded union grievance and is preempted by the CSRA. The court agrees with the defendants' second argument and finds that, although Parker's so-called defamation claim arises under federal law, it is preempted by the CSRA.

## II. ANALYSIS

### A.

■ Absent a federal question, the court lacks jurisdiction over this suit because there is no diversity of citizenship. The defendants contend that, if Parker wishes to style this suit as a pure common-law defamation action, then it does not raise a federal question, regardless of the fact that the alleged defamation arose out of union affairs. Under normal circumstances the defendants would be absolutely correct and the lawsuit would be due to be dismissed. *See Cox v. International Union of Operating Engineers*, 672 F.2d 421, 422–23 (5th Cir.1982). As the defendants admit, however, the conduct at issue occurred on Fort Rucker, which is a federal military enclave subject to the exclusive jurisdiction of the United States. *See United States v. Benson*, 495 F.2d 475, 482 (5th Cir.), *cert. denied*, 419 U.S. 1035, 95 S.Ct. 519, 42 L.Ed.2d 310 (1974). Federal enclaves are governed by federal law, and the federal law applied to conduct occurring in the enclave incorporates much of the state law of the surrounding state:

> "The federal law of every enclave includes state law which was in force at the time of the cession, where such state law is not inconsistent with federal law or policy.... This assures that no new federal enclave, regardless of size, will be left without laws.... However, laws of the state adopted after the cession are without any force or effect on the federal enclave."

*Lord v. Local Union No. 2088, Int'l Broth.*, 646 F.2d 1057, 1059–60 (5th Cir. Unit B June 4, 1981), *cert. denied*, 458 U.S. 1106, 102 S.Ct. 3483, 73 L.Ed.2d 1366 (1982). Because of this rule, Parker's defamation action arises under federal law, even though his cause of action has its origin in Alabama law. Accordingly, his facial complaint properly invokes this court's federal question jurisdiction under 28 U.S.C.A. § 1331. *See Mater v. Holley*, 200 F.2d 123, 124–25 (5th Cir.1952).

### B.

▮ The court's analysis does not end there, however; one additional problem remains. The conduct of labor organizations is regulated by two extensive federal statutory and regulatory schemes. Labor organizations consisting of members employed in the private sector are governed by the LMRDA, while the CSRA covers those labor organizations consisting only of members employed by the federal government. *Hester v. Int'l Union of Operating Engineers*, 818 F.2d 1537, 1542 n. 12 (11th Cir. 1987), *vacated on other grounds*, 488 U.S. 1025, 109 S.Ct. 831, 102 L.Ed.2d 963 (1989), *on remand*, 878 F.2d 1309 (11th Cir.1989) (original holding reaffirmed); *Laity v. Beatty*, 766 F.Supp. 92, 102 (W.D.N.Y. 1991), *aff'd*, 956 F.2d 1160 (2d Cir.1992) (Table). Parker does not dispute that Local 1815 falls into the latter category and thus that the union is governed by the CSRA, rather than the LMRDA. *See Hester*, 818 F.2d at 1541–42 (status of locals based on their own membership rather than membership of their parent organization). Although the two statutes and their accompanying regulations set almost identical standards for the assurance of union democracy and safeguards against improper disciplinary actions by unions against their members, they employ different forums for vindicating a union member's rights. *Local 1219, Amer. Fed. of Gov. Employees v. Donovan*, 683 F.2d 511, 515 n. 13 (D.C.Cir. 1982); *Laity*, 766 F.Supp. at 102. Under the LMRDA an aggrieved party may file an action in federal court. 29 U.S.C.A. § 412. The CSRA, on the other hand, directs the Assistant Secretary of Labor to prescribe regulations governing standards of conduct for labor organizations, 5 U.S.C.A. § 7120, and a member's sole remedy for violations is to file a complaint with the Assistant Secretary under 5 U.S.C.A. § 7120(d).[2] *Donovan*, 683 F.2d at 515 n. 13; *Laity*, 766 F.Supp. at 102.

Not only does the CSRA not provide a private right of action in the district court, it also precludes district courts from taking jurisdiction over CSRA-related claims. As numerous courts have noted, it would make little sense for Congress to have constructed an extensive administrative scheme if plaintiffs could circumvent it simply by framing union and employment grievances as tort actions. In the words of the Court of Appeals for the District of Columbia Circuit,

"Congress passed an enormously complicated and subtle scheme to govern employee relations in the federal sector, including the authorization of collective bargaining. It follows, then, that federal employees may not circumvent that structure even if their claim is based as well on the Constitution.... To permit the district court's assertion of jurisdiction would simply put a premium on clever drafting of a complaint."

*Steadman v. Governor, U.S. Soldiers' & Airmen's Home*, 918 F.2d 963, 967 (D.C.Cir.1990). *See also Saul v. United States*, 928 F.2d 829, 842 (9th Cir.1991) (infliction of emotional distress, defamation and invasion of privacy) ("Both the CSRA and its legislative history show that Congress did not intend that state tort law operate within the interstices of the act."); *Roth v. United States*, 952 F.2d 611 (1st Cir.1991); *Broughton v. Courtney*, 861 F.2d 639 (11th Cir.1988).[3]

Despite Parker's assertions in his brief filed with the court that this case presents no labor issues, quite the opposite picture is presented from a reading of his complaint: His complaint presents nothing other than issues of union conduct. Parker's complaint is simply that Schumaker leveled an unsubstantiated charge against him which the union acted upon without abiding by proper procedural rules and possibly in bad faith. He does not contend that Schumaker's complaint alleges misconduct outside of the scope of his role as union stew-

**2.** These CSRA regulations are codified at 29 C.F.R. §§ 457–459.

**3.** Although these cases concern challenges to personnel actions, the court has not been pres-

ented with any reason why their analysis should not apply just as strongly to union disciplinary proceedings.

288

ard, and his allegation that the union's "publication" of her complaint was wrongful is grounded solely on the charge that the union failed to follow required procedures. Parker's belated effort to recharacterize his complaint a libel action is disingenuous. His complaint must therefore be brought before the Assistant Secretary, not before this court. *See, e.g.,* 29 C.F.R. § 458.2(5) (safeguards against improper disciplinary action), § 458.30 (removal of elected officers). The court therefore concludes that it lacks authority over this action.