**Sherwin J. WATKINS, Plaintiff,**

v.

**GENERAL REFRACTORIES COMPANY, a corporation; John Does 1–5, Defendants.**

**No. 92–C–122A.**

United States District Court, D. Utah, C.D.

Oct. 29, 1992.

---

Thomas S. Taylor, Suitter, Axland, Armstrong & Hanson, Provo, Utah, for plaintiff.

Stanley J. Preston, Snow, Christensen & Martineau, Salt Lake City, Utah, for defendants.

ALDON J. ANDERSON, Senior District Judge.

## I. Facts

Plaintiff, Sherwin J. Watkins, was hired by Defendant, General Refractories, in January of 1971 as a cost supervisor at the defendant's Lehi, Utah plant for an indefinite term. Watkins worked at the Lehi plant until October 15, 1990, when he was terminated. It is undisputed that neither Watkins, nor General Refractories, entered into any written employment agreement, although both parties signed an agreement relating to discoveries and inventions developed at General Refractories. During his employment, Watkins advanced through the corporate hierarchy as a Plant Controller, Assistant Plant Manager, and a Glass Marketing Manager. The latter position was a senior-management position at the company. During his employment, Watkins was never disciplined or reprimanded for any work-related conduct.

As a Glass Marketing Manager, Watkins participated in General Refractories' Marketing Manager's Compensation Program. This incentive program permitted Marketing Managers to receive commissions for sales in addition to regular salary. The Marketing Manager's Compensation Program stated:

> To receive a commission payment, a Marketing Manager must be on the Company's payroll as of the end of the month except in the event of retirement or death, in which case any commission earned shall be paid to the manager or his estate.

Watkins received a copy of the Compensation Program before he was terminated. When Watkins was terminated, he was engaged in negotiating several significant sales to customers.

Additionally, when Watkins was hired by General Refractories, Watkins signed a discoveries and inventions agreement which provided that "all discoveries and inventions conceived or made by Employee during the period of his employment relating to the activities or business of the Employer shall belong to the Employer." Watkins participated in developing several new products while employed at General Refractories.

On April 1, 1981, General Refractories promulgated an amended "Termination of Employment" procedures statement ("Termination Procedures"). The Termination Procedures provided for five different grounds for termination of employment: (1) Layoff (2) Release (3) Discharge (4) Resignation, and (5) Retirement. Each ground for termination required different procedures to be followed by the employee and the company. A "layoff" would occur when the company required a termination of employment "due to a reduction in force or organizational changes...." Of particular relevance to this dispute, the "permanent layoff" procedure only required the employee's immediate supervisor to (a) obtain the department manager's approval, (b) obtain approvals from the division/subsidiary Employee Relations Manager and its President, and (c) obtain the approval of

the Corporate Vice President of Personnel. Unlike the procedures for a "release," the layoff procedures did not require that the employee receive notice or a hearing prior to termination.

In early 1990, General Refractories sought to reduce operating costs by laying off employees and consolidating certain employment positions. Between 1990 and 1991, General Refractories eliminated approximately 43 salaried positions and consolidated about 22 salaried positions. During these restructurings, General Refractories' officials determined that Watkins' position of Glass Marketing Manager was no longer integral to the company. On October 11, 1990, Watkins was informed by his supervisor, Dennis McCort, that he was being laid off as part of a "permanent reduction in force," effective October 16, 1990. Upon termination Watkins received eleven weeks severance pay as well as his commissions through September 30, 1990.

During his employment, Watkins leased a company car in his own name. General Refractories reimbursed Watkins for $550.00 per month for the lease. At the time of his termination, Watkins owed $5500.00 for the balance of the lease. Watkins attempted to return the leased vehicle after he was terminated, but the lessor insisted the Watkins honor the term of the lease.

Following his termination, Watkins sought employment with Geneva Steel. Watkins alleges in his complaint that General Refractories official made defamatory statements about him to Geneva Steel personnel which influenced Geneva Steel to reject Watkins' application for employment.

## II. Legal Analysis

### A. *Contractual Claims*

#### 1. Implied–in–Fact Contract

■ Watkins claims that General Refractories breached an implied-if-fact employment contract with him by failing to provide Watkins with notice and a hearing prior to termination. Under Utah law, if an employee is hired for an indefinite term without a written employment contract, it is presumed that the employment is "at-

will" and can be terminated for any reason, as long as the termination does not violate a state or federal statute. *Johnson v. Morton Thiokol, Inc.*, 818 P.2d 997, 1000 (Utah 1991). However, the employee may rebut the at-will presumption by showing the existence of an implied-in-fact contract, such as the terms found in an employment manual. *Brehany v. Nordstrom, Inc.*, 812 P.2d 49, 54 (Utah 1991). If the presumption of at-will employment is rebutted by the employer's policies and procedures, the discharged employee may have a breach of implied contract claim according to the terms of that contract. *Berube v. Fashion Centre, Ltd.*, 771 P.2d 1033, 1044–46 (Utah 1989). Moreover, as implied terms of the employment agreement, the employer must comply with the policy manual's statements in good faith. However, where the implied contract terms are unambiguous, and the employer complied with those terms, it is a question of law to determine whether the employer complied with the terms of the implied employment contract. *Caldwell v. Ford, Bacon & Davis, Inc.*, 777 P.2d 483, 486 (Utah 1989).

■ With respect to Watkins' claims regarding the effect of the General Refractories' employment procedures, Watkins has overcome the presumption of at-will employment. Watkins has submitted copies of specific termination procedures for various levels of employees. General Refractories does not dispute the authenticity of these documents. Thus, this court finds that Watkins was not an at-will employee who could be terminated at any time for any reason.

■ Nevertheless, to recover for breach of an implied-in-fact contract, Watkins must also show that General Refractories failed to comply with the termination procedures promulgated on April 1, 1981. Watkins asserts that, as a salaried employee employed for more than six months, he was entitled to notice and a hearing regarding his termination. Additionally, he claims that General Refractories breached the implied covenant of good faith and fair dealing with respect to those termination procedures. Watkins offers no factual support

for this claim except his assertion that he was entitled to notice and a hearing prior to termination.

General Refractories' policies manual, however, does not require that an employee receive any such notice and hearing if the employee is "laid-off" as a part of corporate reorganization or downsizing. In fact, General Refractories complied with its procedures for laying off a salaried employee such as Watkins, as a part of corporate restructuring. As required by the "Termination of Employment Procedures" issued on April 1, 1981, the decision to lay off Watkins was properly approved by Watkins' two supervisors and the company's Vice President of Personnel. Because General Refractories complied in good faith with its lay-off procedures, Watkins has no claim against the company for breach of an implied-in-fact employment agreement. Therefore, this claim is dismissed as a matter of law.

### 2. Public Policy Exception

█ Watkins has alleged, in general terms, that "Defendants wrongfully, maliciously and tortiously breached their duty when Plaintiff was wrongfully discharged and intentionally termination...." Watkins construes this as a "good faith" requirement to be implied into the employment agreement.

█ The Utah Supreme Court, in *Peterson v. Browning*, 832 P.2d 1280, 1282–83 (Utah 1992), recognized a cause of action, in tort, under the public policy exception to the at-will employment rule. In such a case, if an employee is terminated "in a manner or for a reason that contravenes a clear and substantial public policy," the employee will be permitted to pursue an action in tort. *Id.* In determining what constituted a violation of "public policy," the *Peterson* court reasoned that "declarations of public policy can be found in our statutes and constitutions." *Id.* For ex-

ample, an employee cannot be terminated for performing some public obligation or exercising a legal right. *Id.* at 1282–83. Such exceptions are to be "narrowly construed" and apply only when "the statutory language expressing the public conscience is clear and when the affected interests of society are substantial." *Id.*

With respect to Watkins's claim, his pleadings do not allege any statute or important public policy which has been violated by his termination. Though Watkins alleges financial and emotional hardship upon himself and his family, this is insufficient under the *Peterson* standard. As such, Watkins' claim should be dismissed as a matter of law.

### 3. Unjust Enrichment

Watkins forwards contractually-based unjust enrichment claims[1] for (a) sales commissions; (b) automobile lease benefits (c) compensation for improvement and creation of General Refractories' products, and (d) vacation benefits.

#### a. *Sales Commissions*

█ Watkins' argues that, based upon the "Marketing Managers Compensation Program," he is entitled to receive sales commissions relating to sales he made during the last month of his employment. Watkins contends that General Refractories intentionally fired him to avoid paying a substantial commission which would have been payable if Watkins had remained at the firm through the end of October, 1990. Additionally, Watkins asserts that the "Marketing Managers Compensation Program" required that Watkins "be employed as of the end of the month" and General Refractories fired him in violation of that requirement.

General Refractories' "Marketing Managers Compensation Program" states that to receive his commission payment, Watkins "must be on the Company's payroll as

---

1. Watkins' claims are confusing because he merges the equitable concept of unjust enrichment with legal notions of breach of contract and tort. Watkins' "Memorandum in Opposition to Defendant's Motion to Dismiss or in the Alternative for Partial Summary Judgment" in-

discriminately substitutes the terms "unjust enrichment" with "breach of contract." Nevertheless, it seems most appropriate to describe Watkins' claims as seeking an unjust enrichment type of remedy.

of the end of the month except in the event of retirement or death...." Watkins was not on the payroll at the end of October and, by agreement, is not entitled to any commission. Upon examining the agreement, no support exists in the "Marketing Managers Compensation Program" for Watkins' claim that General Refractories was required to employ Watkins through the end of the month. Because General Refractories complied with the terms of this agreement, this claim is dismissed.

### b. Claim for Compensation for Improvement and Creation of General Refractories' Products

■ Watkins claims that he was involved in several projects at General Refractories in which his effort was instrumental in developing and marketing the products. Watkins disavows any "ownership" interest in the products, but argues that he would have been entitled to significant increases in salary (not commission). Watkins maintains that General Refractories fired him to avoid paying him a higher salary.

In response, General Refractories argues that an Employee Agreement, signed and dated October 20, 1972 by Watkins and General Refractories ("1972 Agreement"), controls this issue. The 1972 Agreement specifically states that all discoveries and inventions made by an employee during his employment relating to the activities or business of General Refractories belong to the company. Because all of Watkins' contributions occurred during his employment with the company, General Refractories maintains that Watkins has no legal claim to any profits from those discoveries.

The 1972 Agreement specifically states that "any and all discoveries and inventions conceived or made by Employee during the period of his employment relating to the activities or business of Employer shall belong to the Employer." Moreover, this promise by the employee is in consideration of employment and salary during the employees' tenure with the company. Thus, despite Watkins' claim that he asserts no ownership interest in the inventions, his claim is meritless because the salary which he was paid while at General Refractories satisfied the company's obligations (consideration) under the 1972 Agreement. Watkins has no basis for asserting possible (and highly speculative) future *salary* increases as the basis for a breach of the 1972 Agreement. This claim is dismissed on the grounds that it is controlled by the 1972 Agreement which bars Watkins' claim.

### c. Unpaid Balance of Automobile Lease

■ Watkins argues that General Refractories has an obligation to satisfy the outstanding balance on the lease for Watkins' company car. Watkins leased the car in his own name. Currently, Watkins remains in possession of the car. Watkins maintains that he was terminated by General Refractories because the company sought to avoid paying the balance of the lease.

In response, General Refractories argues that (1) Watkins leased the car in contravention of company policy and procedure,[2] (2) a company car is a benefit which ceases upon termination, and (3) Watkins failed to mitigate his damages by retaining the car and continuing to drive it, rather than returning it to the lessor.

General Refractories asserts that Watkins' lease was in contravention to company policy and procedure, but it offers no proof of what the leasing procedures were in its Motion for Summary Judgment. Additionally, General Refractories made payments on Watkins' lease while he worked at the firm, despite the fact that the lease was contrary to company policy. It appears, therefore, that General Refractories may have either created a separate agreement for Watkins' company car lease, or modified the existing lease policies by permitting Watkins to lease the car and paying for Watkins' lease in contravention of the policy. It is inappropriate to grant summary judgment where the material terms of Watkins' company car lease are unclear and disputed. General Refracto-

---

**2.** General Refractories submitted no documents regarding its company car leasing procedures.

ries' Motion for Summary Judgment is denied with respect to the automobile lease.

#### d. *Vacation Benefits*

Watkins alleges that General Refractories owes him remuneration under the company's vacation benefits program. General Refractories does not address this issue in this Motion for Summary Judgment. As such, this issue remains for trial.

### B. *Defamation Claim*

 Watkins argues that General Refractories made defamatory statements regarding his work ability to members of Geneva Steel when Watkins was seeking employment at that company. Watkins' claim for defamation should be barred by Utah Code Ann. § 78–12–29(4) (1988). Under Utah law, the one year statute of limitations for defamation begins to run when the defamation is known or reasonably discoverable by the plaintiff. *Allen v. Ortez,* 802 P.2d 1307, 1314 (Utah 1990). Watkins was aware of the allegedly defamatory statements made in November, 1990. Watkins Complaint was filed in January, 1992. As such, the Watkins' claim for defamation should be barred by the statute of limitations, Utah Code Ann. § 78–12–29(4) (1988). Because of this, it is unnecessary to reach the pleading and privilege arguments raised by General Refractories. This claim is dismissed as a matter of law.

### C. *Injurious Falsehood, False Light and Tortious Interference with Prospective Economic Advantage Claims*

#### 1. Injurious Falsehood

 Watkins argues that "the tort of injurious falsehood protects the economics of Watkins, his prospective employment income that could have mitigated some of his damages—lost income." Watkins' Memorandum in Opposition to Plaintiff's Motion to Dismiss fails to articulate any distinction between defamation and "injurious falsehood." Watkins cites no authority to support his claim.

**3.** Watkins' claim for defamation is, as discussed above, barred by the statute of limitations.

The Utah Supreme Court has recognized the tort of injurious falsehood. *Direct Import Buyers Ass'n v. KSL, Inc.,* 538 P.2d 1040, 1042 (Utah 1975). However, the *Direct Import Buyers* decision distinguished injurious falsehood claims from defamation claims. *Id.* at 1042. The court noted that injurious falsehood concerns statements regarding the quality of the plaintiff's product or the character of the plaintiff's business. *Id.* By contrast, a defamation claim concerns statements about an individual's reputation. *Id.; see also Restatement (Second) of Torts* § 623A (1977) (stating that injurious falsehood claims address economic interests, rather than personal reputation).

 With respect to Watkins' claim, his Memorandum in Opposition to Plaintiff's Motion to Dismiss fails to articulate any economic interest which has been harmed other than his alleged loss of employment with Geneva Steel. To support a claim for injurious falsehood under Utah law, the injury must stem from economic losses relating to business interests. Thus, while a defamation claim might remedy such an injury,[3] the tort of injurious falsehood simply does not reach the types of personal interests Watkins alleges. Therefore Watkins' claim for injurious falsehood is dismissed.

#### 2. Tortious Interference with Prospective Economic Advantage

 Watkins argues that the statements made by General Refractories officials to Geneva Steel personnel were an attempt to intentionally interfere with Watkins' future employment prospects. Though it is unclear from Watkins' Memorandum in Opposition to Plaintiff's Motion to Dismiss, it appears that Watkins contends that General Refractories intentionally interfered with Watkins' negotiations with Geneva Steel, either through defaming his reputation or for the improper purpose of preventing his employment with Geneva Steel.

Utah Code Ann. § 78–12–29(4) (1988).

■ Under Utah law, Watkins must prove that (1) General Refractories intentionally interfered with Watkins' existing or potential economic relations, (2) for an *improper purpose or improper means,* and (3) which caused injury to Watkins. *Leigh Furniture & Carpet Co. v. Isom,* 657 P.2d 293, 304 (Utah 1982). General Refractories argues that, if Watkins attempts to satisfy the "improper means" standard though defamation, Watkins will be unsuccessful because General Refractories' conditional privilege would protect any statements about Watkins' termination to Geneva Steel.

General Refractories correctly argues that it had a qualified privilege to discuss the reasons for Watkins' termination with the company with a prospective employer such as Geneva Steel. *Brehany v. Nordstrom, Inc.,* 812 P.2d 49, 54 (Utah 1991). In *Brehany,* the Utah Supreme Court concluded that "the qualified privilege protects an employer's communication to employees *and other interested parties* concerning the reasons for an employee's discharge." *Id.* at 58. Geneva Steel is a qualified party because it was a customer of General Refractories which was considering hiring Watkins. Geneva Steel had a valid interest in the reasons for Watkins' discharge. *Restatement (Second) of Torts* § 594 cmt. f (1977).

■ General Refractories fails to address the alternative "improper purpose" standard which Watkins might use to satisfy the three-prong test. The "improper purpose" standard requires Watkins to prove that General Refractories intentionally informed Geneva Steel of Watkins' unfavorable work record for the *sole purpose* of preventing Watkins from obtaining employment with Geneva Steel. For example, the *Leigh Furniture* decision rejected a plaintiff's claim under the "improper purpose" standard when the statements were made not for the sole purpose of injuring the plaintiff, but rather to assist the defendant in competing with the plaintiff. *Id.* at 301. Thus, with respect to the statements made by the General Refractories' officials, the "improper purpose" test will not support Watkins' claim because the statements were made for the purpose of informing Geneva Steel of Watkins' work history, rather than for the sole purpose of preventing Watkins' from obtaining employment. Therefore, Watkins' claim for tortious interference with prospective economic relations is dismissed.

### 3. False Light

■ Watkins argues that General Refractories officials' statements to Geneva Steel personnel portrayed Watkins in a "false light" for which Watkins should be permitted to recover.

Under Utah law, the tort of false light requires that:

One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if

(a) the false light in which the other was placed would be highly offensive to a reasonable person, and

(b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

*Cox v. Hatch,* 761 P.2d 556, 563 (Utah 1988). For a "publication" to be effective, the statements must be "distributed to a large number of persons, or any broadcast over the radio, or a statement made in address to a large audience." *Restatement (Second) of Torts* § 652D, cmt. a (1977). "The distinction, in other words, is one between private and public communication." *Id.* It is clear, then, that the tort of "false light" requires some "publication" broader than a private conversation. Because the entire discussion regarding Watkins occurred in a private meeting, the "false light" claim should fail due to the lack of publication. Therefore, Watkins "false light" claim is dismissed as a matter of law.

### III. Decision

After considering the facts and relevant law, this court concludes that, with the exception of vacation benefits and automo-

bile lease claims, Watkins' claims against General Refractories should be dismissed as a matter of law. The vacation benefits and automobile lease claims remain for trial.

IT IS SO ORDERED.