**Joseph CELLI, Frederick Gentile, Plaintiffs,**

v.

**William SHOELL, et al., Defendants.**

No. 1:93–CV–0158–S.

United States District Court,
D. Utah,
Central Division.

Jan. 9, 1998.

William R. Ormond, Ogden, UT, for Plaintiffs.

Kevin M. Grile, American Federation of Government Employees, AFL–CIO, Chicago, IL, Arthur F. Sandack, Salt Lake City, UT, for Defendants.

SAM, Chief Judge.

## ORDER

This matter is before the court for review of the report and recommendation of the magistrate judge ("R & R") filed in July 1997 disposing of the parties' cross motions for summary judgment. The R & R granted defendants' motion for summary judgment and denied plaintiffs' motion. Plaintiffs and defendants thereafter filed objections to the R & R and defendants have responded to plaintiffs' objections. The matter is therefore ready for determination by this court.

The court has reviewed the entire file and conducted a *de novo* review of the pending motions and the R & R. After a thorough review and recitation of applicable law, the R & R concluded that this court lacks federal enclave jurisdiction.[1] The court finds the magistrate correctly read and applied U.C.A. § 27–0–1 (1943) and that said statute only reserved the right to execute the state's process, both civil and criminal, and did not intend the broader interpretation urged by plaintiffs.

In addition, the magistrate's analysis of the law in effect in Utah in 1943 is materially correct. The plaintiffs' presented no evidence to support a finding that their common law claims could have been presented under the law in effect in the state of Utah in 1943. Hence, for the reasons expressed in the R & R, which this court adopts as its opinion and incorporates herein by reference, the defendants' motion for summary judgment is granted and plaintiffs' motion for summary judgment is denied.

So Ordered.

## REPORT & RECOMMENDATION

BOYCE, United States Magistrate Judge.

Plaintiffs are members of the American Federation of Government Employees, AFL–CIO, Local 1592, employed at Hill Air Force Base. They filed suit against their national union, American Federation of Government Employees, AFL–CIO (AFGE), their local union, AFGE Local 1592, and present and former union officials including National President John N. Sturdivant, 13th District National Vice President Don Solano, National Representative Mike Hurley, Local 1592 President Jon Scott Blanch, William Shoell,

---

1. The only issue before the court is whether federal enclave jurisdiction exists over plaintiffs' state law claims. The federal claims were properly dismissed by the district court previously, and said dismissal upheld by the Tenth Circuit. *See Celli v. Shoell*, 40 F.3d 324 (10th Cir.1994). Hence, portions of plaintiffs objections are without application to the issues before the court, including plaintiffs' discussion of the *Wildeberger* and *Martinez* cases. *See* Plaintiff's Objection to Report and Recommendation of Magistrate at para. 11.

and Harlan Francis. The complaint included one federal claim based on Title VII of the Civil Service Reform Act of 1978, 5 U.S.C. §§ 7101–7135, its implementing regulations, 29 C.F.R. Parts 457 and 458, and the Labor–Management Reporting and Disclosure Act of 1959, 29 U.S.C. §§ 401–531. The complaint also contained several state law claims including breach of contract, negligence, intentional infliction of emotional distress, and defamation. The case was referred to the magistrate judge under 28 U.S.C. § 636(b)(1)(B) and is presently before the court on plaintiffs' motion for summary judgment and defendants' motion to dismiss or, in the alternative, for summary judgment. (File entries 44 & 47, respectively.)

## I. PROCEDURAL HISTORY[1]

After the complaint was filed, defendants filed a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), or, in the alternative, for summary judgment under Rule 56. The district court dismissed the federal claim for failure to exhaust administrative remedies and lack of subject matter jurisdiction over suits against private parties under the Civil Service Reform Act. The court then dismissed the state law claims for lack of pendent jurisdiction.

On appeal, the Tenth Circuit affirmed the court's dismissal of plaintiffs' federal claim. However, it remanded the case for determination whether this court has jurisdiction over plaintiffs' state law claims by virtue of federal enclave jurisdiction, a form of federal question jurisdiction. *Celli v. Shoell*, 40 F.3d 324 (10th Cir.1994). Plaintiffs then filed a motion for summary judgment (file entry 44), and defendants filed a motion to dismiss or, in the alternative, for summary judgment (file entry 47).

## II. FACTUAL BACKGROUND[2]

Plaintiffs allege that in January or February 1990, they announced a slate of candidates for union officers to run against the incumbent, defendant Shoell, and his slate of candidates. At that time, defendant Shoell was president of Local 1592. After defendant Shoell and his candidates won the election held May 19, 1990, plaintiffs charged that the election was unfair. Subsequently, a Department of Labor administrative law judge found that the election was improper and ordered a new election. Plaintiffs allege that concomitantly, starting in early 1990, they were subjected to a significant change in treatment within the union both as members of the union and as union officials. Plaintiffs allege that this change in treatment was retaliation by the defendants for plaintiffs' activities in opposing defendant Shoell, and for filing an election protest. (Compl.¶ 10.)

## III. STANDARD FOR SUMMARY JUDGMENT

Summary judgment should be entered if the record shows that "there is no genuine

---

**1.** Prior to filing the instant case on December 15, 1993, plaintiffs, on November 2, 1991, filed an administrative complaint raising similar claims with the Department of Labor, Office of Labor–Management Standards. On July 21, 1993, the administrative law judge issued a recommended decision and order finding that plaintiffs' rights had been violated and recommending an injunction, reinstatement of plaintiffs in their positions as union stewards, and punitive damages. The case was then transferred to the Assistant Secretary of Labor for Labor–Management Standards for final decision. The Assistant Secretary issued a decision on September 29, 1994, and a supplemental decision on December 19, 1994, upholding the ALJ's determination that defendants had violated Department of Labor regulations. As a result, he ordered Local 1592 to reinstate plain-

tiffs as representational stewards and to cease and desist from interfering with their rights. However, he found that plaintiffs had failed to establish compensatory damages and that punitive damages were inconsistent with the statutory authorization of the Department of Labor. (See ex. 1 & 2 to Defs.' Mem. Supp. Mot. Dismiss or Summ. J., file entry 50.)

**2.** In addition to the facts set forth in this section, plaintiffs state that they incorporate by reference the Procedural History and Statement of Facts sections contained in the Recommended Decision and Order of the ALJ at pages 2–18 as their position regarding the facts of this case. (Compl.¶ 9.) The Recommended Decision and Order is attached to the complaint as ex. A.

issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

A party moving for summary judgment bears the initial burden of informing the court of the basis of its motion. It may do so by identifying portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, that demonstrate that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In response, the non-moving party must go beyond the pleadings and by affidavits, or by depositions, answers to interrogatories, and admissions, designate specific facts showing that there is a genuine issue for trial. *Id.* at 324. If the nonmoving party fails to meet this burden, summary judgment is mandated. *See id.* at 322.

## IV. DISCUSSION

### A. *Federal Enclave Jurisdiction*

As the Tenth Circuit observed in *Celli,* it appears from the complaint that one or more of the events at issue occurred on Hill Air Force Base, a federal enclave. The Constitution grants Congress the power to exercise exclusive jurisdiction over enclaves acquired by the United States with the state's consent for various military purposes. U.S. Const. art. I, § 8, cl. 17. The magistrate judge takes judicial notice that Hill Air Force Base is a federal enclave subject to the exclusive jurisdiction of the United States.

According to a Base Jurisdiction Map and a document entitled History of Hill Air Force Base submitted by plaintiffs, Hill Air Force Base became a federal enclave in 1943, a fact not disputed by defendants. (Ex. A & B, respectively, attached to Pls.' Supplemental Br., file entry 88.) Accordingly, the court accepts 1943 as the year in which the United

States obtained exclusive jurisdiction over Hill Air Force Base.

■ It is well settled that state laws in effect at the time of the transfer of jurisdiction over a federal enclave remain in force and become a part of the federal law governing the enclave. However, subsequently enacted state laws have no application. *See Paul v. United States,* 371 U.S. 245, 265, 268, 83 S.Ct. 426, 9 L.Ed.2d 292 (1963); *James Stewart & Co. v. Sadrakula,* 309 U.S. 94, 99–100, 60 S.Ct. 431, 84 L.Ed. 596 (1940); *Stokes v. Adair,* 265 F.2d 662, 665 (4th Cir.1959), *cert. denied,* 361 U.S. 816, 80 S.Ct. 56, 4 L.Ed.2d 62 (1959). Thus, in the instant case, the law applicable to plaintiffs' common law claims [3] is the law of the State of Utah in effect in 1943.

■ Plaintiffs argue that under the statute ceding jurisdiction to the United States, the State of Utah retained the right to enforce its laws within the lands thus ceded. Plaintiffs contend that because of the alleged retention of state jurisdiction, this court can apply subsequently enacted state law to the claims in this case. The statute at issue provides as follows:

> Jurisdiction is hereby ceded to the United States in, to and over any and all lands or territory within this state which have been or may be hereafter acquired or leased by the United States for military or naval purposes and for forts, magazines, arsenals, dock yards and other needful buildings of every kind whatever authorized by act of congress; this state, however, reserving the right to execute its process, both criminal and civil, within such territory.

Utah Code Ann. § 27–0–1 (1943).[4]

The court does not read this statute as broadly as urged by plaintiffs. Rather, a fair reading of the statute is that the State of

---

**3.** As the court noted in *Celli,* if federal enclave jurisdiction exists, state laws in effect within the enclave lose their character as laws of the state and become federal laws. *Celli,* 40 F.3d at 328 n. 4. Hence, the court will refer to plaintiff's state law claims as "common law claims."

**4.** A copy of section 27–0–1 is attached to plaintiffs' Supplemental Brief Concerning What Law Existed and Should Be Applied to Cases Originating on Hill Air Force Base, file entry 88.

Utah retains the right to have its process served on the federal enclave. *See James v. Dravo Contracting Co.,* 302 U.S. 134, 146, 58 S.Ct. 208, 82 L.Ed. 155 (1937)(noting that reservations of this sort were frequent in grants made by states to the United States in order to prevent the granted places from becoming a sanctuary for fugitives from justice). Further, as defendants argue, if the statute's import is as suggested by plaintiffs, this court would not have subject matter jurisdiction in the instant case, since no federal question would exist. *See Pratt v. Kelly,* 585 F.2d 692 (4th Cir.1978).

### B. *Plaintiffs' Common Law Claims*

#### 1. *Breach of Contract*

Plaintiffs allege that a contract of membership existed between the union and its members which was breached by defendants. Specifically, plaintiffs allege that defendants breached the contract by violating a duty of fair and equal treatment. (Compl.¶ 17.) In their memorandum concerning jurisdiction, plaintiffs state that their breach of contract claim arises out of a breach of the collective bargaining agreement (CBA). (Pls.' Mem. Points & Auth. Concerning Jurisdiction at 4, file entry 69.) They explain that "the membership contract is part of the over-all CBA between the union and the federal government . . . ." (*Id.* at 8.)

■ Plaintiffs argue that because the breach of contract claim involves a breach of the CBA, section 301 of the Labor Management Relations Act, codified at 29 U.S.C. § 185, applies to this case. The pertinent portion of section 301 provides as follows:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). Plaintiffs cite *Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957) for the proposition that federal common law, rather than state law, applies to suits under section 301. However, as defendants point out, the definition of "employer" for purposes of section 301 specifically excludes the United States. 29 U.S.C. § 152(2). Thus, section 301 does not apply to this case.

■ Rather, labor relations in the federal sector are governed by Title VII of the Civil Service Reform Act of 1978 (CSRA), 5 U.S.C. §§ 7101–7135. *Karahalios v. National Fed'n of Fed. Employees, Local 1263,* 489 U.S. 527, 531, 109 S.Ct. 1282, 103 L.Ed.2d 539 (1989). As the Supreme Court has observed, "Section 301 has no equivalent under Title VII; there is no provision in that Title for suing an agency in federal court." *Id.* at 536.

■ In *Karahalios,* the plaintiff attempted to sue the National Federation of Federal Employees for breach of the duty of fair representation. The Supreme Court held that Congress has vested exclusive authority for enforcement of that duty in the Federal Labor Relations Authority (FLRA) and its General Counsel and that no private cause of actions exists. *Id.* at 529. In reaching this conclusion, the Court noted that under 5 U.S.C. § 7118, complaints of unfair labor practices are adjudicated by the FLRA which is authorized to order remedial action to carry out the purposes of Title VII. *Id.* at 532. The Court further observed that recourse to the federal courts is available under Title VII in only three instances: (1) aggrieved persons may seek review of a final FLRA order in the appropriate court of appeals, 5 U.S.C. § 7123(a); (2) the FLRA may seek judicial enforcement of its orders in the court of appeals, § 7123(b); and (3) the FLRA may seek temporary injunctive relief in the district court to assist it in the discharge of its duties, § 7123(d). *Karahalios,* 489 U.S. at 532. Consequently, the Court concluded that the courts' role in CSRA fair representation cases is limited to appellate

courts "sitting in review of the FLRA." *Id.* at 536. The Court explained,

> To hold that the district courts must entertain such cases in the first instance would seriously undermine what we deem to be the congressional scheme, namely to leave the enforcement of union and agency duties under the Act to the General Counsel and the FLRA and to confine the courts to the role given them under the Act.

*Id.* at 536–37.

■ In the instant case, plaintiffs' breach of contract claim arises out of an alleged breach of the collective bargaining agreement. The fact that plaintiffs characterize this claim as a breach of contract rather than as an unfair labor practice cannot serve to confer jurisdiction on this court. *See, e.g., Montplaisir v. Leighton,* 875 F.2d 1, 4 (1st Cir.1989)(holding legal malpractice claim preempted by CSRA and stating that "creative labelling cannot carry the day"); *United States Marshals Service v. Federal Labor Relations Auth.,* 708 F.2d 1417, 1421 (9th Cir.1982) (stating that a party may not avoid the FLRA's jurisdiction by an artful course of pleading); *Columbia Power Trades Council v. United States Dep't of Energy,* 671 F.2d 325, 329 (9th Cir.1982)(noting that it would frustrate the Congressional scheme if the FLRA's exclusive jurisdiction could be thwarted by a party's characterization of the lawsuit); *Ramos v. American Federation of Government Employees, AFL–CIO,* 693 S.W.2d 485 (Tex.Ct.App.1985)(holding that under CSRA, state court lacked subject matter jurisdiction over breach of contract claim against AFGE filed by individual who was former president of Local 1617).

■ The court concludes that plaintiffs' breach of contract claim is preempted by the CSRA which vests the FLRA with exclusive authority over a claim such as this which involves an alleged breach of the collective bargaining agreement. *See Karahalios,* 489 U.S. at 529. Accordingly, this court is without subject matter jurisdiction over plaintiffs' breach of contract claim.

■ In its decision on plaintiffs' appeal in the instant case, the Tenth Circuit instructed this court, in the event that it should decide that consideration of the preemption issue is appropriate, to also examine whether the inclusion of 29 C.F.R. § 458.2(c) [5] in the bill of rights section of the Standards of Conduct regulations promulgated under Title VII of the CSRA precludes a finding of preemption in this case. *Celli,* 40 F.3d at 328. The provision at issue provides as follows: "Nothing contained in this section shall limit the rights and remedies of any member of a labor organization under any State or Federal law or before any court or other tribunal, or under the constitution and bylaws of any labor organization." 29 C.F.R. § 458.2(c) (1996).

The court concludes that this regulation does not preclude a finding of preemption. First, if the regulation were intended to preclude preemption, it would be invalid since a regulation cannot change the effect of the statute under which it is promulgated. *See Montero v. Meyer,* 861 F.2d 603, 609 (10th Cir.1988)(stating that a regulation cannot be interpreted so as "to thwart the mandate of the relevant statute"), *cert. denied,* 492 U.S. 921, 109 S.Ct. 3249, 106 L.Ed.2d 595 (1989). Moreover, the regulation is not inconsistent with preemption. The regulation refers to matters contained in this section, *i.e.,* the "bill of rights," § 458.2, not to the statutory scheme enacted by Congress. Accordingly, the regulation does not preclude preemption.

### 2. Negligence

■ As discussed above, under federal enclave jurisdiction, the court applies the state law in effect at the time of the transfer of jurisdiction. Accordingly, the court looks to Utah law in effect in 1943 to determine whether the state recognized the various common law claims asserted by plaintiffs.

Plaintiffs have cited several cases to show that Utah recognized negligence claims in

---

**5.** The Tenth Circuit miscited this provision as 29 C.F.R. § 458.2(a)(5)(c).

1943. However, none of the cases cited by plaintiffs involved a relationship between a union, or similar association, and its members. Further, plaintiffs have failed to show that Utah would have recognized a duty on the part of a union or its officials which, if breached, would give rise to a negligence claim. Accordingly, plaintiffs cannot succeed on this claim.

### 3. *Intentional Infliction of Emotional Distress*

 Plaintiffs cannot succeed on their claim for intentional infliction of emotional distress because Utah did not recognize such a claim until 1961 when the Utah Supreme Court decided the case of *Samms v. Eccles*, 11 Utah 2d 289, 358 P.2d 344 (1961). In *Samms*, the court reviewed the existing case law and concluded that "the best considered view recognizes an action for severe emotional distress." *Id.* at 346. The court then set out the elements of the cause of action. *Id.* at 346–47. *See also Maxfield v. North Am. Phillips Consumer Elec. Corp.*, 724 F.Supp. 840, 844 (D.Utah 1989)(noting that Utah recognized a cause of action for intentional infliction of emotional distress and set out the applicable standards in *Samms v. Eccles*).

Plaintiffs cite the case of *Jeppsen v. Jensen*, 47 Utah 536, 155 P. 429 (1916), for the proposition that Utah law would have recognized their intentional infliction of emotional distress claim in 1943. In *Jeppsen*, the defendant had come into the plaintiff's home and threatened her husband with a revolver in her presence. The plaintiff, who was recovering from a recent childbirth, alleged that defendant's conduct caused her to become greatly frightened and terrified so that "she fell in a swoon or faint, and was attacked by a nervous chill, and her nervous system so gave way and she became prostrated so that she was confined to her bed for the greater part of two days, and ever since said time she ha[d] been in a highly nervous state and condition, so that she [did] not sleep well, and [was] easily disturbed, and frightened by any unusual noise or occurrence." *Id.* at 430.

In reaching its decision that the complaint stated a cause of action, the Utah Supreme Court concluded that from the standpoint of civil redress, there was no legal distinction between making an assault on the plaintiff and in making one in her presence upon her husband. *Id.* The court stated, "Prima facie, the acts complained of and testified to constituted an unlawful assault." *Id.* at 431. Thus, the *Jeppsen* decision hinged on the fact that the defendant committed an assault which, while not inflicting bodily injury on the plaintiff, resulted in damage to the plaintiff's health caused by terror or fright.

Plaintiffs have alleged no facts in the instant case that would bring it within the *Jeppsen* decision. Since Utah did not recognize a claim for intentional infliction of emotional distress until 1961, defendants are entitled to summary judgment on this claim.

### 4. *Defamation*

 Plaintiffs allege that defendants made defamatory statements, both written and oral, against the plaintiffs over a four-year period. Plaintiffs state that these defamatory statements were published to third parties including, but not limited to, the union membership through a newsletter, and that their reputations were damaged as a result. (Compl. ¶¶ 25–27.)

Although acknowledging that Utah law recognized a claim for defamation in 1943, defendants state that plaintiffs have failed to show that the State would have recognized a claim based on an alleged defamatory statement by an association or its officials against members within the confines of the organization. Defendants further contend that this claim is subject to dismissal because it is barred by the applicable statute of limitations and because plaintiffs have failed to identify the alleged defamatory statements.

As noted above, the underlying facts in this case are set forth in the recommended decision of the ALJ. As defendants point out, most of the events giving rise to plaintiffs' complaint occurred in 1990. Defendants con-

tend that the last event arguably at issue was the removal of plaintiff Gentile as a union steward on April 5, 1991. Plaintiffs have not disputed this assertion. Plaintiffs filed the instant case on December 15, 1993.

The applicable statute of limitations for slander and libel in Utah is one year. Utah Code Ann. § 78–12–29(4) (1996); *Watkins v. General Refractories Co.,* 805 F.Supp. 911, 917 (D.Utah 1992). This limitations period has been in effect since at least 1933. See Utah Rev. Stat. § 104–2–26(4) (1933).

Under Utah law, the one-year limitations period begins to run when the defamatory statement is known or is reasonably discoverable by the plaintiff. *Watkins,* 805 F.Supp. at 917; *Allen v. Ortez,* 802 P.2d 1307, 1314 (Utah 1990). In the instant case, all the events complained of had occurred by April 5, 1991. Since the suit was not filed until December 15, 1993, more than two years later, the case is barred by the statute of limitations.

Plaintiffs argue that the case is not time-barred. They state that under Utah law, where a complaint alleges a continuing tort, the statute of limitations does not begin to run until the relationship between the tortfeasors and the complainant has terminated. Plaintiffs contend that their complaint alleges a continuing tort. Further, since they are still members of the union, the relationship between plaintiffs and the alleged tortfeasors, *i .e.,* the union and its officers, has not terminated. Under this view, plaintiffs' defamation claim is within the limitations period.

In support of their argument that termination of the relationship with the tortfeasor is necessary to start the running of the statute, plaintiffs cite *Peteler v. Robison,* 81 Utah 535, 17 P.2d 244 (1932). In *Peteler,* a medical malpractice case, the Utah Supreme Court concluded that the case was not barred by the applicable four-year statute of limitations even though it was filed more than eight years after the first alleged act of malpractice. However, the court did not hold that the statute of limitations began to run only after the relationship between the defendant doctor and the plaintiff had terminated. Instead, the court held that the case was not barred because the tort was a continuing one and the right of action was also continuing. The court explained that if the only negligence alleged had been the first negligent act, the cause of action would have accrued at that time and the case would have been barred by the statute of limitations. The court stated, however, that the plaintiff had alleged that the defendant doctor undertook the treatment of her throat. Further, she had alleged that from the time he started treatment until he ceased it, he did so in a negligent and unskillful manner. The court stated that as alleged, the treatments were not separate and distinct acts, representing separate and distinct causes of action, but instead constituted an entire course of treatment by the physician, the whole of which constituted only one cause of action. *Peteler,* 17 P.2d at 249.

■ As defendants argue, repeated defamatory statements do not toll the running of the statute of limitations. Rather, each new statement constitutes a distinct cause of action. 50 *Am.Jur.2d Libel and Slander* § 427 (1995); 53 *C.J.S. Libel and Slander* § 122 (1987). In the instant case, plaintiffs have failed to point to any defamatory statement that was made within the year preceding the filing of the defamation claim. *See Amica Mut. Ins. Co. v. Schettler,* 768 P.2d 950, 960 (Utah App.1989). Accordingly, the plaintiffs' claim is barred by the statute of limitations.

■ Alternatively, defendants contend that the complaint is defective because it fails to identify any statement of the defendants alleged to be defamatory. Plaintiffs' allegations supporting their defamation claim are as follows:

25. Defamatory statements, both written and oral, were made by the Defendants against the Plaintiffs over the past four years.

26. These defamatory statements were published to third parties, including but

not limited to the membership of the union by newsletter.

27. The Plaintiffs' reputations were injured as a result of these defamatory statements, thus resulting in the damages set forth in the prayer for relief herein.

(Compl.¶¶ 25–27.)

Since pleading requirements are procedural, the court applies federal pleading standards rather than looking to 1943 Utah law. *See Blazer v. Black,* 196 F.2d 139, 144 (10th Cir.1952). Under Rule 8(a) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Mountain View Pharmacy v. Abbott Labs.,* 630 F.2d 1383, 1386 (10th Cir.1980). Although the complaint need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests, *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Mountain View Pharmacy,* 630 F.2d at 1386, it must give sufficient notice to allow the defendant to formulate a responsive pleading. *Mountain View Pharmacy,* 630 F.2d at 1386–87; *Riblet Tramway Co. v. Monte Verde Corp.,* 453 F.2d 313, 318–19 (10th Cir.1972). In the case of a defamation claim, the allegations in the complaint must afford the defendant sufficient notice of the allegedly defamatory communications to allow him to defend himself. *Liguori v. Alexander,* 495 F.Supp. 641, 647 (S.D.N.Y. 1980). *See also Goldstein v. Kinney Shoe Corp.,* 931 F.Supp. 595, 597 (N.D.Ill.1996)(stating that federal pleading standards generally require the complaint to state the specific words of the allegedly defamatory statement in order to allow the defendant to frame a responsive pleading).

In the instant case, the complaint fails to identify any specific defamatory statements made by the defendants or when, where, or to whom any defamatory statements were made. Since plaintiffs have failed to identify any defamatory statement, the defamation claim is subject to dismissal for failure to state a claim upon which relief can be granted.

Defendants also contend that plaintiffs' defamation claim is preempted by the CSRA. In *Parker v. Main,* 804 F.Supp. 284 (M.D.Ala.1992), the plaintiff union steward raised a defamation claim based on an allegedly defamatory complaint filed against him with the union by a co-worker and published by the union. Noting that the complaint presented nothing other than union conduct, the court found that the plaintiff's defamation claim was merely a deceptively pleaded union grievance that was therefore preempted by the CSRA. In reaching its decision, the court stated that "it would make little sense for Congress to have constructed an extensive administrative scheme if plaintiffs could circumvent it simply by framing union and employment grievances as tort actions." *Id.* at 287. Similarly, plaintiffs' allegations in this case arise out of their union activities. As such, plaintiffs' defamation claim amounts to no more than a union grievance and is therefore preempted by the CSRA.

## V. RECOMMENDATION

No genuine issue of material fact exists on any of plaintiff's claims. Accordingly, defendants' motion for summary judgment should be granted and plaintiffs' motion for summary judgment should be denied.

Copies of the foregoing Report and Recommendation are being mailed to the parties, who are hereby notified that they have the right to object to the Report and Recommendation. The parties are further notified that they must file any objections to the Report and Recommendation within ten (10) days after receiving it. Failure to file objections may constitute a waiver of those objections on subsequent appellate review.

July 15, 1997.