**Eunice RODRIGUEZ and Nicholas Mancuso, Plaintiffs,**

v.

**Carroll HAYNES (aka Carl Haynes), City Employees Union Local 237, International Brotherhood of Teamsters, Defendants.**

No. 04 CIV. 2950(SAS).

United States District Court, S.D. New York.

Sept. 28, 2004.

---

**418**

Howard Wien, Esq., Koehler & Isaacs, LLP, New York, NY, for Plaintiffs.

Susan Davis, Esq., Joseph J. Vitale, Esq., Travis M. Mastroddi, Esq., Cohen, Weiss and Simon, LLP, New York, NY, for Defendants.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

## I. INTRODUCTION

 Eunice Rodriguez and Nicholas Mancuso, members of the Executive Board of City Employees Union Local 237, are suing Local 237, its current president Carl Haynes and the International Brotherhood of Teamsters ("IBT"), for interfering with plaintiffs' joint campaign for union office and for misappropriating Local 237's resources to assist Haynes in his re-election campaign. Each plaintiff alleges five causes of action against the defendants: (a) subjecting plaintiffs to unequal treatment in violation of the Labor Management Reporting and Disclosure Act ("LMRDA") Section 101(a)(1);[1] (b) suppressing plaintiffs' freedom of speech in violation of LMRDA § 101(a)(2);[2] (c) improperly imposing disciplinary action in violation of LMRDA § 101(a)(5),[3] and in breach of the IBT Constitution and Local 237 By–Laws,[4] thereby asserting claims

1. *See* 29 U.S.C. § 411(a)(1).

2. *See id.* § 411(a)(2).

3. *See id.* § 411(a)(5).

4. *See* Constitution of the International Brotherhood of Teamsters ("IBT Constitution"), Ex. 1 to Declaration of Travis M. Mastroddi, Esq. in Support of the Local Union Defendants' Motion to Dismiss ("Mastroddi Decl."); By-Laws of the City Employees Local Union No. 237, International Brotherhood of Teamsters, AFL–CIO ("Local 237 By–Laws"), Ex. 2 to Mastroddi Decl.

In considering a motion to dismiss, courts may not consider matters outside the pleadings. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir.2002). For purposes of Rule 12(b), the complaint includes "any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Id.* (quoting *International Audiotext Network, Inc. v. American Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995)). Because the IBT Constitution and Local 237 By–Laws are referenced in the Complaint ("Compl."), albeit not attached, I shall consider them in deciding the motion to dismiss. *See* Compl. ¶¶ 42, 83, 84, 99, 101, 119, 121, 123, 137, 139. I will also consider the 10/28/03 Letter to James Hoffa, Jr., Ex. 3 Mastroddi Decl., discussed in Part II. *See* Compl. ¶¶ 32–37.

under the Labor–Management Relations Act ("LMRA") Section 301;[5] (d) failing to convene a trial board to hear the purported charges against Haynes, in breach of the IBT Constitution, thereby asserting claims under LMRA § 301;[6] and (e) misappropriating union assets in violation of sections 722 and 723 of the New York Labor Law.[7] Haynes and Local 237 (collectively "defendants") now move to dismiss the Complaint, arguing that this Court lacks subject matter jurisdiction over the LMRDA claims, that plaintiffs have failed to exhaust their remedies as required by the LMRA, and that plaintiffs have failed to meet statutory prerequisites to filing suit under the New York Labor Law.[8] For the reasons set forth below, defendants' motion to dismiss is granted in its entirety.

## II. FACTS

Local 237 represents approximately 23,000 workers employed by New York City and other public bodies.[9] The individuals in this action are all members of the union's Executive Board. Haynes has served as President since 1993,[10] Rodriguez serves as the Recording Secretary and as a Business Representative, and Mancuso serves as the Secretary–Treasurer.[11] By September 2003, Rodriguez had declared her in-

tention to seek nomination for the presidency and Mancuso declared his intention to seek re-election as Secretary–Treasurer, each candidate announcing his or her support for the other's campaign.[12]

The Complaint alleges that Haynes, along with union members loyal to him, engaged in what plaintiffs describe as three categories of "dirty tricks" purportedly designed to secure Haynes' presidency and to hinder plaintiffs' joint election campaign.[13] The first category involves the use of union resources, including the employment of union funds and certain Local 237 employees, to operate Haynes' re-election campaign.[14] The second category includes numerous instances of "harassment and retaliation,"[15] including allegations that two Local 237 employees followed Rodriguez in an unmarked van,[16] that Rodriguez was ordered to report all of her activities to Citywide Division Director Gregory Floyd,[17] that Floyd "engaged in a partisan political attack" on Rodriguez's candidacy during a time reserved for strictly union matters,[18] and that Haynes circumvented Mancuso's role as Secretary–Treasurer by having other officers sign checks.[19] Finally, plaintiffs allege that the "penultimate dirty trick" occurred following an incident on April 7, 2004.

5. *See* 29 U.S.C. § 185.

6. *See id.*

7. *See* New York Labor Law §§ 722(3), (723)(1)(f).

8. *See* Fed.R.Civ.P. 12(b)(1), (6).

9. *See Perez v. International Brotherhood of Teamsters, AFL–CIO,* No. 00 Civ. 1983(LAP)JCF, 2004 WL 1824100, at *1 (S.D.N.Y. Aug.16, 2004) ("Local 237 serves as the collective bargaining representative for approximately 23,000 members who are employed in various classifications by the City of New York and its agencies and on Long Island.").

10. *See id; see also* Compl. ¶ 6.

11. *See* Compl. ¶¶ 4, 5.

12. *See id.* ¶¶ 9–11.

13. *See* Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Pl. Mem.") at 3.

14. *See* Compl. ¶¶ 12, 21–23; *see also* Pl. Mem. at 3–4.

15. *See* Pl. Mem. at 4.

16. *See* Compl. ¶ 15.

17. *See id.* ¶ 16.

18. *See id.* ¶¶ 27, 28.

19. *See id.* ¶¶ 46, 47. A complete list of the "harassment and retaliation" claims can be found in Pl. Mem. at 4–5.

That day, plaintiffs and several of their supporters distributed campaign literature at Metropolitan Hospital, a Local 237 represented bargaining unit location, to union members as they entered and left the building. At approximately 11:15 p.m. that evening, Haynes supporter Robert Brown accused plaintiffs of engaging in improper campaigning at the hospital, and the next day, at an Executive Board meeting, Haynes told plaintiffs that they were being given "formal warnings" for their conduct, which purportedly violated the IBT Constitution and Local 237 By–Laws. Plaintiffs deny that their conduct breached the terms of either document.[20]

Throughout the year leading up to this lawsuit, plaintiffs wrote a barrage of letters and memoranda to "the powers that be," including Haynes, IBT's president James Hoffa, Jr., and the Independent Review Board, apprising them of the alleged "dirty tricks."[21] One such letter, dated October 28, 2003, and entitled "Charges," was sent to Hoffa with a statement of five charges against Haynes:

> (1) misuse of the newsletter; (2) permitting Local 237 employees to campaign for him while on union and employer time using union and employer assets; (3) permitting Local 237 employees to harass and stalk Rodriguez including an allegation that a union vehicle was being used for surveillance of Rodriguez; (4) permitting Local 237 employees to falsify time sheets; and (5) permitting cam-

paign meetings to be held at the union headquarters.[22]

The letter requested an "immediate investigation of these five charges."[23] Similarly, Mancuso sent Haynes a memorandum on March 3, 2004, requesting a "full scale externally controlled investigation of the complaints ...."[24] Aside from Haynes responding by memorandum to one of Mancuso's accusatory letters,[25] no action was taken by any of the defendants in response to plaintiffs' many letters and memoranda.[26]

## III. LEGAL STANDARD

### A. Rule 12(b)(1)

 "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."[27] When the defendant challenges the legal sufficiency of the plaintiff's jurisdictional allegations, the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff.[28] However, "where evidence relevant to the jurisdictional question is before the court, 'the district court ... may refer to [that] evidence.'"[29] Therefore, "[i]n resolving the question of jurisdiction, the [ ] court can refer to evidence outside the pleadings and the plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."[30] The consideration of materials ex-

---

**20.** Compl. ¶¶ 73–84.

**21.** Pl. Mem. at 16.

**22.** *Id.* at 8; *see also* Compl. ¶¶ 32–37; 10/28/03 Letter to James Hoffa, Jr.

**23.** 10/28/03 Letter to James Hoffa, Jr. at 3.

**24.** Compl. ¶ 53.

**25.** *See id.* ¶ 52.

**26.** *See id.* ¶¶ 14, 19, 26, 31, 45, 51.

**27.** *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir.2000).

**28.** *See Robinson v. Government of Malaysia,* 269 F.3d 133, 140 (2d Cir.2001) (quotation marks and citation omitted).

**29.** *Id.* (alterations in original) (quoting *Makarova,* 201 F.3d at 113).

**30.** *Luckett v. Bure,* 290 F.3d 493, 496–97 (2d Cir.2002).

trinsic to the pleadings does not convert the motion into one for summary judgment.[31]

### B. Rule 12(b)(6)

"Given the Federal Rules' simplified standard for pleading, '[a] court may dismiss a complaint *only* if it is clear that no relief could be granted under *any* set of facts that could be proved consistent with the allegations.'"[32] Thus, a plaintiff need only plead "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."[33] Simply put, "Rule 8 pleading is extremely permissive."[34]

At the motion to dismiss stage, the issue "'is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test.'"[35]

The task of the court in ruling on a Rule 12(b)(6) motion is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof."[36] When deciding a motion to dismiss pursuant to Rule 12(b)(6), courts must accept all factual allegations in the complaint as true and draw all reasonable inferences in plaintiff's favor.[37]

## IV. DISCUSSION

### A. Subject Matter Jurisdiction Under the LMRDA

■ Section 412 of the LMRDA provides for federal jurisdiction over suits by persons alleging that their statutory rights are or were infringed by a "labor organization," which the Act defines as an entity that "exists for the purpose, in whole or part, of dealing with employers concerning" various terms of employment.[38] Section 402(e) excludes from the definition of employer "the United States or any corporation wholly owned by the Government of the United States or any State or political subdivision thereof."[39] Mixed unions, however, which represent both public and private employees, are covered by the LMRDA.[40] Defendants move to dismiss

---

**31.** *See CCS Int'l Ltd. v. United States,* No. 03 Civ. 507 DC, 2003 WL 23021951, at *2 (S.D.N.Y. Dec. 24, 2003).

**32.** *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (emphasis added) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)).

**33.** *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (quoting Fed.R.Civ.P. 8(a)).

**34.** *Wynder v. McMahon,* 360 F.3d 73, 77 (2d Cir.2004).

**35.** *Phelps v. Kapnolas,* 308 F.3d 180, 184–85 (2d Cir.2002) (per curiam) (quoting *Chance v. Armstrong,* 143 F.3d 698, 701 (2d Cir.1998)).

**36.** *Saunders v. Coughlin,* No. 92 Civ. 4289 (CSH), 1994 WL 88108, at *2 (S.D.N.Y. Mar. 15, 1994).

**37.** *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir.2002).

**38.** 29 U.S.C. §§ 402, 412.

**39.** *Id.* § 402(e); *see also Commer v. McEntee,* 283 F.Supp.2d 993, 997 (S.D.N.Y.2003)("It is well settled that the provisions of the LMRDA do not apply to unions, or members of unions, that consist exclusively of public employees.").

**40.** *See* 29 C.F.R. § 451.3(a)(4) (1995) ("organization[s] composed both of government locals and non-government or mixed locals ... would be ... subject to the Act"); *see also London v. Polishook,* 189 F.3d 196, 198 (2d Cir.1999) (citing cases all "subscribing to the proposition that unions that represent and bargain for both public and private sector employees are subject to the Act"); *Cunningham v. Local 30, International Union of Operating Engineers,* 234 F.Supp.2d 383, 391 (S.D.N.Y.2002).

all of plaintiffs' LMRDA claims on the ground that because Local 237 only represents public employees, it is not covered by the LMRDA.

Plaintiffs allege that Local 237 is a mixed union because "several of Local 237's employees are also members of Local 237, a private sector employer including secretaries, directors, assistants and Local 237's comptroller."[41] Defendants respond that the union's inclusion of its own employees as members "does not render Local 237 a 'mixed union' subject to the LMRDA."[42] Thus, the issue before the Court is whether a union, though largely comprised of members employed by the public sector, is nevertheless considered a mixed union because a small number of its members are employed by the union itself, a private sector entity. This appears to be a question of first impression.

Defendants argue that in order to qualify as a private sector union, the union must actually represent the members in bargaining with the members' private sector employers.[43] The Second Circuit has not directly considered whether it is the actual representation, or the membership, of private sector employees that determines whether a union is a "labor organization" under the LMRDA.[44] Several other circuits, however, have concluded that representation, and not mere membership, is required to establish jurisdiction under the Act.[45] This Court has followed the other circuits, holding that "the issue of whether or not [a union] is mixed is determined by representation rather than just mere membership."[46]

Despite the weight of contrary authority, plaintiffs contend that the mere membership of private sector employees in an otherwise public sector union suffices to render a union "mixed," and therefore covered by the LMRDA.[47] To support their argument, plaintiffs rely on language in *Laity v. Beatty,* which found "the LMRDA's definition of labor union to include unions *consisting of* employees, as defined in 29 U.S.C. § 402(i), and employ-

---

**41.** Compl. ¶ 7.

**42.** Local Union Defendants' Reply Memorandum of Law in Support of their Motion to Dismiss ("Reply Mem.") at 1.

**43.** *See* Local Union Defendants' Memorandum of Law in Support of their Motion to Dismiss ("Def. Mem.") at 10.

**44.** Defendants contend that the Second Circuit's decision in *London* "affirms" their position that a union must actually represent members in bargaining with a private employer in order to fall under the purview of the LMRDA. Reply Mem. at 1. The language quoted by defendants, however, that "unions that *represent and bargain for both* public and private sector employees are subject to the Act," *London,* 189 F.3d at 198 (emphasis added by defendants), was a part of the Circuit's recitation of the plaintiff's argument, *not* a legal conclusion by the court.

**45.** *See, e.g., Meredith v. Louisiana Federation of Teachers,* 209 F.3d 398, 405 (5th Cir.2000) (remanding to decide whether the defendant union "actually bargains with private sector employers"); *Thompson v. McCombe,* 99 F.3d 352, 354 (9th Cir.1996) (joining other circuits in holding that "the important question is not whether the union has represented private sector employees in the past, but whether the union currently deals with or represents private sector employees"); *Martinez v. Am. Fed. of Gov't Employees,* 980 F.2d 1039, 1042 (5th Cir.1993) (remanding to determine whether the union "deals with any private sector employers on behalf of its members concerning the terms and conditions of employment"); *Hester v. Int'l Union of Operating Engineers,* 818 F.2d 1537, 1541 (11th Cir.1987), *rev'd on other grounds,* 488 U.S. 1025, 109 S.Ct. 831, 102 L.Ed.2d 963 (1989) ("unions representing employees working for private employers ... are subject to the LMRDA").

**46.** *Lynch v. Patrolmen's Benevolent Ass'n,* No. 99 Civ. 63 LAP, 1999 WL 713369, at *1 (S.D.N.Y. May 18, 1999).

**47.** *See* Pl. Mem. at 10–11.

ees in the public sector."[48] Plaintiffs argue that "[i]n choosing to use the phrase 'consisting of' rather that [sic] 'represented by,' the court seemed to accept that simple membership would confer LMDRA jurisdiction."[49]

*Laity*, however, is factually inapposite. Unlike Local 237, the union in *Laity* actually *represented* both private and public sector employees.[50] Thus, the court never confronted the issue raised in this case: whether a union that merely *consists* of both public and private employees is a "mixed union" covered under the Act. Moreover, *Laity* explicitly based its holding on *Hester v. International Union of Operating Engineers*, which squarely held that "unions *representing* employees working for private employers ... are subject to the LMRDA."[51] Accordingly plaintiffs' reliance on *Laity* is misplaced.

Limiting the LMRDA's coverage to unions that *represent* private sector employees comports with the statute's nature and purpose. The LMRDA was passed "to protect workers whose unions are susceptible to corrupt leadership—unions that deal with private employers, to whatever extent, and which are thus afforded power by federal labor law."[52] Unions that represent only public employees are excluded from the Act's protection because "[t]he rights to bargain collectively and to use economic weapons to gain concessions from employers create power in the hands of leaders of unions representing private sector employees, power that does not rest in the hands of leaders of public sector unions."[53] Thus, unless a union's leadership is susceptible to abusing power, power that was created as a result of its representation of private sector employees, the Act's protection is unnecessary. Mere membership, without representation, of private sector employees, creates no special power in the hands of Local 237's leadership.

 Moreover, there is no evidence to suggest that Local 237 is unique in including its employees as members of the union. If plaintiffs' argument were accepted, any union including its employees as members would defeat the private sector requirement established by the LMRDA, a result Congress did not intend. Accordingly, only a union that actually represents private sector union members is a "labor organization" for purposes of conferring LMRDA jurisdiction.

Plaintiffs also argue that the court should "presume that employee/members of a local union collectively bargain with the Local as employer and, therefore, satisfy the 'dealing with' language of the LMRDA thus creating a mixed local."[54] Plaintiffs' theory is entirely implausible. As an initial matter, a union does not engage in collective bargaining with itself. Moreover, plaintiffs never allege that such representation occurs; rather, they ask the Court to make this improbable presumption.

Because Local 237 is not a "labor organization" under the LMRDA, plaintiffs' claims under that statute are dismissed for lack of subject matter jurisdiction.

**B. Exhaustion of Remedies Under the LMRA**

 Defendants move to dismiss all of plaintiffs' LMRA claims on the ground

---

48. *Laity v. Beatty*, 766 F.Supp. 92, 97 (W.D.N.Y.1991) (emphasis added), *aff'd*, 956 F.2d 1160 (2d Cir.1992).

49. Pl. Mem. at 11.

50. *See Laity*, 766 F.Supp. at 97.

51. *Hester*, 818 F.2d at 1540.

52. *Id.* at 1542.

53. *Id.* at 1542 n. 12.

54. Pl. Mem. at 11.

that plaintiffs failed to exhaust internal union remedies. The IBT Constitution and Local 237 By–Laws contain precise mechanisms by which a union member may seek to redress an alleged wrong perpetrated by union members, IBT local unions or IBT officers.[55] Furthermore, the IBT Constitution explicitly requires exhaustion of remedies.[56]

Assuming that Haynes issued a "formal warning" and that this action amounted to discipline in violation of the IBT Constitution, "plaintiffs did not avail themselves of three means under the IBT Constitution to correct the alleged wrong." [57] *First,* Article XIX, Section 2(a) of the IBT Constitution provides that "[i]n the event disciplinary action is taken against the accused, he or she may take an appeal from the Executive Board of the Joint Council, if one exists." [58] *Second,* plaintiffs could have filed charges against Haynes with the IBT Secretary–Treasurer, to be heard before the IBT's General Executive Board ("GEB").[59] *Finally,* plaintiffs could have brought charges against Local 237 by filing a complaint with the Secretary of the Executive Board of the Joint Council, to be heard before that Board.[60] Although plaintiffs "sent letter after letter and memorandum after memorandum to the powers that be; specifically, Haynes, Hoffa, and the IRB," including a document entitled "Charges," complaining of the alleged misconduct, plaintiffs never followed any of the remedial paths provided by the IBT Constitution.[61]

■■■ "As a general rule in cases to which federal law applies, federal labor policy requires that individual employees wishing to assert contract grievances must *attempt* use of the contract grievance procedure agreed upon by employer and union as the mode of redress." [62] While "it is settled that the employee must at least attempt to exhaust exclusive grievance and arbitration procedures established by the *bargaining agreement,*" [63] this policy is not absolute when the court is asked to require exhaustion of *internal* union procedures.[64] Rather, in deciding whether to

55. *See* IBT Const. art. XIX, §§ 1, 2, 4; Local 237 By–Laws §§ 19–20. *See also* Def. Mem. at 3–5 (detailing internal mechanisms available in both the IBT Constitution and Local 237 By–Laws).

56. *See* IBT Const. art. XIX, § 13.

57. Def. Mem. at 13.

58. *Id.* art. XIX, § 2(a). "Local 237 is a member of IBT Joint Council 16." Def. Mem. at 4 n. 4.

59. Other than serving as President of Local 237, Haynes also serves as a Vice President in the IBT, *see* Compl. ¶ 6, and thus is an officer of the International Union. *See* IBT Const. art. IV, § 1(a). "Trial of elective International Union officers shall be only before the General Executive Board ...." *Id.* art. XIX, § 4(d). "Whenever charges are preferred against any member or officer of a Local Union, the charges shall be filed in writing in duplicate with the Secretary–Treasurer of the Local Union, Joint Council, or General Executive Board which is to try the case." *Id.* art.

XIX, § 1(a). Because the GEB is the proper body to try Haynes' case, the charges against Haynes should be lodged with GEB's Secretary–Treasurer.

60. *See id.* art. XIX, § 4(a).

61. Pl. Mem. at 16.

62. *Republic Steel Corp. v. Maddox,* 379 U.S. 650, 652, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965) (emphasis in original).

63. *Vaca v. Sipes,* 386 U.S. 171, 184, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967) (emphasis added); *see also Cespuglio v. Ward,* No. 03 Civ. 8603 (SAS), 2004 WL 1088235, at *4 (May 13, 2004) ("Consistent with the policy underlying section 301, the Supreme Court has long required plaintiffs to exhaust whatever dispute-resolution or grievance procedures exist in the collective bargaining agreement before suing in federal court.").

64. *See Henry v. Community Resource Center, Inc.,* No. 95 Civ. 5480(AJP)(JGK), 1996 WL

apply the exhaustion doctrine to internal union procedures, a court "must balance the right of union members to institute suit against the policy of judicial noninterference in union affairs." [65] The Supreme Court has instructed courts to examine three factors in making this determination, and to excuse the employee's failure to exhaust if any of the three are found to exist:

> [F]irst, whether union officials are so hostile to the employee that he could not hope to obtain a fair hearing on his claim; second, whether the internal union appeals procedures would be inadequate either to reactivate the employee's grievance or to award him the full relief he seeks under § 301; and third, whether exhaustion of internal procedures would unreasonably delay the employee's opportunity to obtain a judicial hearing on the merits of his claim.[66]

### 1. Union Hostility

Plaintiffs allege that "Rodriguez and Mancuso's correspondence with Haynes and Hoffa reveal that they have exhausted all reasonably available internal union remedies and that any further attempts to remedy their complaints through internal union channels would be futile." [67] Furthermore, the majority of plaintiffs' complaints involve accusations regarding Haynes' hostility towards them. Before permitting plaintiffs to proceed under this exception, plaintiffs must show that they could not obtain a fair hearing from the union. Plaintiffs have made no such showing.

Plaintiffs' naked assertion that a union member may not be "penalized for the failure to abide by minor technical rules in such procedures," is without merit.[68] As an initial matter, "[t]he requirement that an aggrieved employee resort to the grievance procedure is not a mere ritual or formality." [69] Moreover, the so-called "minor technical rules" exist for a reason and make perfect sense in this case. While it is entirely reasonable to expect, based on the allegations in the Complaint, that Haynes was hostile towards plaintiffs and that he would not trigger an investigation into his own alleged misconduct, union procedures provide that plaintiffs should have brought their complaints to parties external to Haynes and Local 237. Plaintiffs never allege, and there is no indication, that the Executive Board of the Joint Council, the Secretary–Treasurer of the Joint Council, or the Secretary–Treasurer of the GEB, were in any way adverse to pursuing plaintiffs' claims. Without having alleged that the designated recipients of the complaints or the bodies designated to review the complaints were hostile, plaintiffs cannot support their contention that exhausting internal remedies would have been futile.[70]

---

65. *Johnson,* 641 F.2d at 1079.

66. *Clayton,* 451 U.S. at 689, 101 S.Ct. 2088. *See also Maddalone v. Local 17, United Bhd. of Carpenters and Joiners of Am.,* 152 F.3d 178, 186 (2d Cir.1998).

251845, at *5 (S.D.N.Y. May 13, 1996) (citing *Clayton v. Int'l Union,* 451 U.S. 679, 689, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981); *Johnson v. General Motors,* 641 F.2d 1075, 1078 (2d Cir. 1981); *In re Puma & Sheet Metal Workers' Int'l Ass'n, Local Union No. 137,* 862 F.Supp. 1077, 1080 (S.D.N.Y.1994)).

67. Compl. ¶ 86.

68. Pl. Mem. at 16.

69. *Abrams v. Carrier Corp.,* 434 F.2d 1234, 1246 (2d Cir.1970).

70. *See Henry,* 1996 WL 251845 at *8 (denying hostility claim where it was undisputed that "the Chapter and Division Boards were independent bodies comprised of neutral and unbiased Union delegates in no way beholden to [the allegedly hostile union organizer]").

### 2. Adequacy of Procedures

"Adequacy of these procedures must be demonstrated by showing that the disgruntled employee can be fully redressed for his injuries . . . ."[71] Plaintiffs seek an injunction enjoining defendants from committing the alleged misconduct and ordering Haynes to pay restitution to Local 237 for the resources he used in his re-election campaign.[72] Once a charge has been sustained, the IBT Constitution permits all of the requested remedies.[73] Accordingly, the internal union procedures are adequate.

### 3. Reasonableness of Procedures

"[A] union can demonstrate the reasonableness of its procedures by showing that 'Union members have been informed of the availability of internal appellate remedies and that these procedures are not particularly cumbersome or confusing.'"[74] Local 237's remedial procedures are readily ascertainable and clearly set forth in Article XIX of the IBT Constitution.[75] Moreover, because plaintiffs were officers on Local 237's Executive Board, they "reasonably should have been aware of the relatively simple procedures."[76]

### C. Failure to Convene a Trial Board in Breach of the IBT Constitution

Plaintiffs' Nineteenth Cause of Action reads:

As a result of the foregoing, Local 237 violated Section 301 of the LMRA when the remaining members of the Executive Board failed to comply with Article XIX, Section 1(a) of the IBT Constitution by failing to appoint a trial board with substitute members for Rodriguez, Mancuso and Haynes and failing to conduct a trial of Haynes on the charges filed by Rodriguez and Mancuso.[77]

Plaintiffs misunderstand the procedures established by the IBT Constitution. Section 1(a) provides that an "officer of a Local Union charged by any other member of the Local Union with any offense constituting a violation of this Constitution shall, *unless otherwise provided in this Constitution,* be tried by the Local Union Executive Board."[78] In their analysis of the union's internal procedures,[79] plaintiffs failed to recognize that section 4(d) does *otherwise provide,* stating that "[t]rial of elective International Union officers shall be *only* before the General Executive Board . . . ."[80] Thus, although Haynes is an officer of the Local Union, as an International Union officer, the only tribunal permitted to hear claims against him is the GEB. And, as discussed earlier, plaintiffs failed to file charges with the GEB's Secretary–Treasurer, the proper recipient of such charges.[81] Accordingly, defendants

---

**71.** *Johnson,* 641 F.2d 1075 at 1079–80.

**72.** *See* Compl. ¶ 139.

**73.** *See* IBT Const. art. XIX, § 10(a).

**74.** *Maddalone,* 152 F.3d at 187 (quoting *Johnson,* 641 F.2d at 1080).

**75.** *See* IBT Const. art. XIX. The IBT Constitution is publicly available on the Internet. *See* IBT Constitution and Bylaws: http://www.teamster.org/about/constitution/toc.htm (last visited Sept. 23, 2004).

**76.** *Maddalone,* 152 F.3d at 187.

**77.** Compl. ¶ 123.

**78.** IBT Const. art. XIX, § 1(a) (emphasis added).

**79.** *See* Pl. Mem. at 13–14.

**80.** IBT Const. art. XIX, § 4(d) (emphasis added). *See also supra* note 59 and accompanying text.

**81.** *See supra* note 55 and accompanying text (discussing the internal remedial procedures provided by the IBT Constitution).

never breached the IBT Constitution by failing to initiate a trial.

### D. New York Labor Law Claim

Where a complaint pleads both federal and common-law claims in federal court, "when the federal claims are dismissed before trial, 'even though not insubstantial in a jurisdiction[al] sense, the state claims should be dismissed as well.' "[82] When all federal claims are dismissed at an early stage of a case, exercise of supplemental jurisdiction over remaining state law claims is usually inappropriate.[83]

## V. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted in its entirety.

SO ORDERED.

---

**82.** *Kavit v. A.L. Stamm & Co.,* 491 F.2d 1176, 1179 (2d Cir.1974) (quoting *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)). *See also* 28 U.S.C. § 1367(c)(3) ("[T]he district court may decline to exercise supplemental jurisdiction" over state claims if "the district court has dismissed all claims over which it has original jurisdiction").

**83.** *See Valencia ex rel. Franco v. Lee,* 316 F.3d 299, 306–07 (2d Cir.2003).